**STATE of Minnesota, Respondent,**

v.

**John ROSE, Appellant.**

**No. C2–83–1715.**

Court of Appeals of Minnesota.

July 3, 1984.

Review Denied Sept. 12, 1984.

C. Paul Jones, Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas J. Foley, Ramsey County Atty., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

John Rose appeals his conviction for criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342(e) (1982) (sexual penetration with force or coercion and personal injury). He contends that his right to a fair trial was denied because of prosecutorial misconduct in the closing argument. He also questions evidentiary rulings of the trial court involving character evidence and use of prior convictions for impeachment. Finally, he contends the trial court's instruction that an attorney's duty includes presenting evidence in his client's behalf improperly implied that appellant had an obligation to prove his innocence. We disagree and affirm.

## FACTS

The state's evidence showed S.W., age 13, was baby-sitting appellant's two nephews at appellant's efficiency apartment. Appellant and Larry Fleming went to a party. Fleming and S.W. had known each other for about eight years and were friends; appellant had dated S.W.'s mother at one time. At the party both appellant and Fleming had 12 to 15 ten ounce glasses of beer and smoked marijuana. They returned to appellant's apartment and shared another marijuana cigarette.

Appellant pushed S.W. down on the water bed taking off her shoes. S.W. got up and sat next to Fleming, saying "Larry, let's go," to which Fleming did not reply. Appellant said "You're not going any place" and "You are a pretty young lady and anyone would go after you," to which S.W. replied "No, I am not, I am just a little girl, leave me alone."

Eventually appellant tore off S.W.'s shirt and bra over S.W.'s screams, punches and kicks, and engaged in sexual intercourse. S.W. testified that Larry Fleming held her arms down with his knees and covered her mouth with his hands while she was raped. Fleming testified he let go when he saw appellant ready to mount S.W. for sexual intercourse. When appellant finished, S.W. collected her clothes and went into the bathroom to dress. She was unable to lock the door or leave through a window. Appellant entered the bathroom and offered to pay her money, but S.W. refused. Fleming heard S.W. crying in the bathroom and assumed appellant was raping her again.

Fleming was granted immunity in exchange for his trial testimony. Both he and S.W. testified that appellant used a knife in making threats. Appellant did not testify. The evidence ·showed S.W. received scratches on her hands and face, a cut lip, and a tear "to the hymen" as a result of the assault.

Appellant was acquitted of two counts of criminal sexual conduct in the first degree; Minn.Stat. § 609.342(c) (1982) (sexual penetration while causing fear of imminent great bodily harm); Minn.Stat. § 609.342(b) (1982) (sexual penetration while armed with a dangerous weapon or threatened use of the weapon to cause submission), but was convicted under Minn.Stat. § 609.342(e) (1982) (sexual penetration with force or coercion and personal injury).

### ISSUES

1. Did prosecutorial misconduct in the closing argument deny appellant his right to a fair trial?

2. Did the trial court abuse its discretion and allow an unfairly prejudicial examination of the state's witness, Larry Fleming, which touched on appellant's character?

3. Did the trial court abuse its discretion by its pretrial ruling that appellant's prior convictions were admissible for impeachment?

4. Was appellant denied a fair trial because of the jury instruction that an attorney's duty includes presenting evidence in his client's behalf?

### I.

Appellant's initial contention is that the cumulative effect of numerous instances of prosecutorial misconduct in closing argument resulted in the denial of a fair trial.

1. The first involves a claim that the prosecutor asked the jury to place themselves in the position of the victim:

[S.W.] came up here and testified before you. And I am sure all of you, you think back to when you were thirteen years old, we had to go and stand up in front of your seventh grade class on the matter that you knew real well even, something of no importance, how your knees would knock and you get scared and light headed. Think about being that age and having to come and talk about details that you find humiliating and embarassing in front of a group of twenty strangers in a courtroom experience. Talking about what you don't want to talk about in front of a person who you allege has done this to you. Think about that when you consider her testimony and how hard it was for this person or any person in that age to go through this type of experience, but she did. And she came here and told you what happened to her.

Under *State v. Johnson*, 324 N.W.2d 199 (Minn.1982), arguments inviting jurors to put themselves "in the shoes of the victim" are generally improper in form. *Id.* at 202. Here, however, the prosecutor was asking the jurors to place themselves in the victim's posture as she *testified*, not during the crime. The purpose was to assist the jury in assessing her credibility. The prosecution has the right to vigorously argue its witnesses are worthy of credibility. *State v. Googins*, 255 N.W.2d 805, 806 (Minn.1977). Moreover, this argument was not made in a way calculated to cause the jury to decide the case on the basis of passion rather than reason and there is no

reason to believe appellant was prejudiced. *Johnson*, 324 N.W.2d at 202.

2. The second alleged instance of misconduct was the prosecutor's referral to S.W.'s future mental anguish:

Most of us, a severe mental anguish is something that you have to determine from the subjective facts, but think about this, this is the type of anguish that lasts with a person. You will see here that even a few days later, most of the injuries to [S.W.], the physical injuries were gone. She will never look at her hand or her face in the mirror a year from now and think, that is where John Rose scratched me, where I got scratched in this rape. * * * And her virginity that she lost, eventually time may heal that wound. There is one wound that will never heal and what happens to you in your mind, that may never heal. Maybe years from now, she may be reading the paper about somebody who was attacked at knife point and what she will be thinking about, what happened to that individual or going back in her mind to what happened to her? Years from now, that is what is meant by severe mental anguish to the person who it happened to.

Most of us look back and we think at thirteen years old, that is the time that was the time of joy for us. We didn't have any responsibilities, our parents were there to take care of us, we played all summer, no jobs; it is a time of fun. How is [S.W.] going to look back on her childhood and on her thirteen-year-old summer? Is it going to be something that is enjoyable to her? Is it going to be a traumatic experience that caused her such mental anguish that she will live with that for the rest of her life? And that is something for you to decide and that is why this is one of the elements in this case. It is a type of personal injury, one that doesn't heal, one that isn't observable; you can't take photographs of what is going on in somebody's mind.

Appellant claims that since no medical evidence was presented, this argument was unfair speculation designed to inflame the passions of the jury. Arguments should be based on the evidence and inferences reasonably drawn from it rather than from matters which serve to divert the minds of jurors from facts they should be considering. *State v. Clark*, 296 N.W.2d 359, 371 (Minn.1980) (citing *State v. Perry*, 274 Minn. 1, 142 N.W.2d 573 (1966)). The evidence indicated that S.W. was a thirteen year old virgin. Appellant insisted she was a pretty young lady and convinced her she did something wrong to bring about the attack as reflected by her statement, "I didn't do nothin' wrong" and by his offering her money as if she was a common prostitute. Within a week, S.W. told her mother she did not want to be pretty and it was time for her to grow up.

The prosecutor's argument was a fair comment on this evidence. No medical opinion was needed to establish that S.W. has suffered and will continue to suffer long lasting mental anguish.

3. The third instance involved the prosecutor's statement that appellant had exercised all his rights to a fair trial. Appellant does not state precisely how this statement constituted misconduct. It cannot be seriously argued that this comment is an indirect reference to an accused's exercise of his right to remain silent. *See generally State v. Spencer*, 311 Minn. 222, 230, 248 N.W.2d 915, 920 (1976).

4. The final instance involved the prosecutor's comment:

Sitting in this chair is not [S.W.], sitting in that chair, that chair represents the people of the State of Minnesota. Not only will you be saying something to the people of the State of Minnesota by your verdict here, but you also will be telling [S.W.] something, you will be telling her that this type of behavior and this conduct will not be tolerated in our community. And it will not be tolerated in this community.

This is improper argument. *State v. Threinen*, 328 N.W.2d 154, 157 (Minn. 1983); *State v. Clark*, 296 N.W.2d 372, 377 (Minn.1980) (disapproving of argument that suggested the jury keep the crime problem in mind in determining the question of defendant's guilt). The fact that prosecutorial misconduct has occurred does not, however, in and of itself, require reversal.

■ Ordinarily defense counsel has a duty to promptly object and ask for curative instructions when the prosecutor makes improper statements in closing argument. Appellant's failure to object forfeits his right to have the issue considered on appeal. *State v. Brown*, 348 N.W.2d 743 at 747 (Minn.1984); *State v. Russell*, 330 N.W.2d 459, 461 (Minn.1983); *State v. Kline*, 306 N.W.2d 132, 133 (Minn.1981).

■ Defense counsel's failure to object to the comment in this case suggests that defense counsel did not find any fault with the argument. *State v. Marquetti*, 322 N.W.2d 316, 318 (Minn.1982). Defense counsel did object to another portion of the prosecution argument on the grounds it misstated the evidence. This contradicts appellant's argument that objecting merely draws further attention to the objectional remarks. Defense counsel chose to counter-argue rather than to object. *State v. Whisonant*, 331 N.W.2d 766, 769 (1983). By responding as he did, appellant forfeited his right to have this issue considered on appeal.

The improper argument was also harmless under the standards for review of a prosecutor's misconduct, set forth in *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974):

The test of determining whether prosecutorial misconduct was harmless depends partly upon the type of misconduct with which we are dealing. * * * Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct this court has ap-

plied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*Id.* at 127, 218 N.W.2d at 200. We cannot conclude that these remarks played a substantial part in influencing the jury to convict. Because the evidence against the appellant was substantial, the prosecutor's comments were harmless.

Even considering all the allegations of misconduct cumulatively, we do not believe a reversal is required. The trial judge, in his discretion, did not deem the argument so improper as to require curative instructions or intervention sua sponte. *State v. Stufflebean*, 329 N.W.2d 314, 319 (Minn. 1983). The jury returned not guilty verdicts on two of the three counts. It is difficult to believe the jurors acted from passion or prejudice.

## II.

■ Appellant contends that the trial court committed reversible error in allowing the state to examine Larry Fleming on the basis of his fear of appellant. On direct examination the following occurred:

Question: Larry, why didn't you do something to help [S.W.]?

Answer: Because I was afraid of John. I knew John can be a violent person. He had threatened me once.

Mr. Anderson: Objection, not responsive, irrelevant.

The Court: Overruled.

The Witness: He had threatened me once.

Mr. Anderson: Objection, lack of foundation.

The Court: That last part is irrelevant. I think you have answered the question so far as you stated you were afraid of him, all right. Ask another question.

   *      *      *      *      *      *

Question (By Mr. Plesha continuing): Let me ask you this, were you very much afraid of John Rose?

Answer: Yes, I was.

Question: Are you a fighting-type of person?

Answer: No, I pretty much consider myself a pacifist. If you don't mess with me, I am not going to mess with you either.

On cross-examination, Fleming stated that he presumed appellant was raping S.W. a second time while in the bathroom. The cross-examination continued:

Question: Okay, while you were presuming he was raping her in the bathroom, were you outside the bathroom door, while it was closed?

Answer: I was sitting on the water bed watching the television.

Question: What were you watching?

Answer: I don't remember.

Question: Was there a phone there?

Answer: Yes, there was.

Question: Was the exterior door locked to the apartment?

Answer: Yes, yes, it was.

Question: To the apartment?

Answer: Yes.

Question: Could you get out?

Answer: Yes, I could get out.

Question: While you were presuming that he was inside for the period of time raping [S.] again, how were you dressed?

Answer: Fully dressed, sitting on the water bed, watching television.

Question: You didn't make any attempt to come to her aid, while you were presuming this, huh?

Answer: No, I was afraid of getting my face kicked in.

Question: And you didn't make any attempt to call the police?

Answer: No.

Question: And you didn't make any attempt to leave?

Answer: I was afraid if I left [S.] there by herself—

Question: You didn't make any attempt to leave, yes or no?

Answer: No.

Question: And you didn't attempt to get any help for her, if that is what you thought?

Answer: No, I didn't.

Question: And isn't it true that while John was having sexual intercourse with her on the floor, that you didn't make any attempt to intervene?

Answer: I already told you, I was afraid that John would come after me.

Question: Isn't it true you didn't make any attempt?

Answer: No, I didn't.

Question: Isn't it true that you could have and you were free to leave at that time, if that was actually happening?

Answer: I could have left or taken a chance that John would have got up and started something with me on my way out.

\* \* \* \* \* \*

Question: You testified earlier on direct examination that you saw him on a regular basis, isn't that true?

Answer: If you had let me finish my statement about why I was afraid of John, then we could—

Question: Mr. Fleming, I am prepared to let you finish making the statement, but you are the one who made the statement.

Then on redirect examination Fleming repeated he was afraid to leave the apartment fearing appellant would harm S.W. He recounted an incident in which the two had been drinking and appellant said maybe he should "just kick [Fleming's] ass." This testimony was received without objection. The prosecutor then asked:

Question: Did John Rose ever tell you or brag to you about his incidents of violence?

Mr. Anderson: Objections, irrelevant and prejudicial.

The Court: Has he ever told you about what?

Mr. Plesha: His prior incidents of violence.

The Court: Step up here.

(Off-the-record discussion at the bench.)

The Court: Objection will be sustained. Proceed.

(Further off-the-record discussion at the bench.)

The Court: The jury will be instructed to disregard the question. Proceed.

Question: (By Mr. Plesha, continuing) Was your fear of John Rose based on more than the one thing that you told us about?

Answer: Yes.

Finally, on recross the examination was as follows:

Question: Mr. Fleming, I want to get this right. On redirect, that is the first question that Mr. Plesha asked you after I questioned you, and he asked you why it was you stayed in that apartment while this was going on and you stated what, John had the knife. You stated you were afraid if you left, he really would do some bodily harm to [S.].

Answer: I was afraid he would stab her with the knife.

Question: What was it that you did that if you were afraid of that, that you would try to prevent him from stabbing her?

Answer: I would have talked him out of it; I would have tried to talk him out of it.

Question: On direct examination, on cross-examination, at no time did you make any mention of any attempt to talk him out of it.

Answer: Out of what, out of raping, him to [S.]?

Question: Out of doing anything with [S.].

Answer: He was in the processing of making love to [S.] before I had a chance to say anything.

Question: Isn't it true, Mr. Fleming, you had asserted to me a number of times, the reason you stayed in the apartment was not to keep him from stabbing her, but because you were afraid for you own safety. Now, which is it?

Answer: I was afraid for both of us.

Appellant later moved for a mistrial which was denied. Appellant now contends the prosecutor was able to obtain a comment on the appellant's character through the questioning of Larry Fleming and this was unfairly prejudicial under Rule 403 of the Minnesota Rules of Evidence. *See State v. Martin*, 256 N.W.2d 85, 86 (Minn. 1977).

Appellant's concerns focus initially on the direct examination in which Fleming said "I knew John can be a violent person. He had threatened me once." This answer, however, was objected to as irrelevant and sustained by the trial court. Defense counsel then attacked Fleming for his failure to assist S.W. On redirect, Fleming, without objection, explained the basis of his fear of appellant through an earlier incident when appellant threatened him. The question "Did John Rose ever tell you or brag to you about his incidents of violence?" was objected to and sustained by the trial court and a cautionary instruction was given.

Appellant and the state argue over who "opened the door" to inquiry about the basis for Fleming's fear of appellant. *See generally State v. Jones*, 329 N.W.2d 832, 833 (Minn.1983). Whether the state or defense counsel "opened the door", appellant's contentions boil down to whether the trial court abused its discretion in its evidentiary ruling. A review of the record shows the trial court allowed a certain amount of inquiry into Fleming's fear. This was certainly relevant in determining Fleming's credibility. The trial court sustained objections when made and when the court determined the question was improper. The trial court's rulings here are within its sound discretion and we find no abuse of that discretion. *State v. Olkon*, 299 N.W.2d 89, 101–02 (Minn.1980), *cert. den.* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119. The questions here were not so "inherently prejudicial that mere disallowance of the answer was insufficient to remove the innuendos caused by it in the minds of the jurors." *Martin*, 256 N.W.2d at 86 (footnote omitted). *See State v. Dudrey*, 330 N.W.2d 719, 721 (Minn.1983). It is

worth repeating, a defendant is entitled to a fair trial, not a perfect trial.

### III.

Appellant also argues the trial court abused its discretion in allowing the state to use five 1979 felony convictions for assault and one felony for attempted aggravated robbery for impeachment purposes. Rule 609(a) of the Minnesota Rules of Evidence allows the use of prior felony convictions to impeach a witness. Only an abuse of discretion will require a reversal on this ground. *State v. Kvale,* 302 N.W.2d 650, 653 (Minn.1981); *State v. Nunn,* 351 N.W.2d 16 at 20 (Minn.Ct.App. June 5, 1984). Under the balancing test adopted in *State v. Jones,* 271 N.W.2d 534 (Minn.1978), we find no abuse of discretion here.

### IV.

Appellant's final contention is the trial court's instruction denied him a fair trial. The court's instruction included the statement that "an attorney is an officer of the court. It is his duty to present evidence on behalf of his client." Defense counsel did not object.

The Minnesota Supreme Court has consistently cautioned against the use of this language in criminal cases because it implies the defendant has an obligation to present evidence. *State v. Edwards,* 343 N.W.2d 269, 277 (Minn.1984); *State v. Haase,* 341 N.W.2d 879, 881 (Minn.1984); *State v. Sharpe,* 339 N.W.2d 57, 58–59 (Minn.1983). The Supreme Court has refused to reverse convictions on this basis, however, in part because no timely objection was made. *Haase,* 341 N.W.2d at 881. Because no objections were made, we too decline to reverse appellant's conviction on this ground.

### DECISION

Appellant's conviction for criminal sexual conduct in the first degree is affirmed. No denial of a fair trial occurred because of prosecutorial conduct in the closing argument. The trial court did not abuse its discretion in its evidentiary rulings, allowing limited testimony touching on appellant's character and allowing the use of prior convictions for impeachment purposes. Finally, the trial court's instruction that an attorney has a duty to present evidence on behalf of his client was improper but not reversible error.

Affirmed.