STATE of Minnesota, Respondent,

v.

Dean Jay GRAVLEY, Appellant.

No. C3–84–714.

Court of Appeals of Minnesota.

Dec. 24, 1984.

Review Denied Mar. 13, 1985.

■■■■■■■■■■■■■■■■■■■■■■■■

Hubert H. Humphrey, III, Atty. Gen., Jerry S. Anderson, Spec. Asst. Atty. Gen., St. Paul, Michael Milligan, Cass County Atty., Walker, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Appellant Dean Gravley appeals from his jury conviction of burglary in the second degree and theft, for breaking into a house, removing the keys to a snowmobile, and stealing the snowmobile. Gravley claims the trial court erred in admitting a statement that he made following his arrest because it was in violation of his *Miranda* rights. He also claims the evidence was insufficient to convict him and that the trial court abused its discretion in ruling the State could impeach him with a prior conviction. He also contends the prosecutor committed several instances of misconduct in closing argument which denied him a fair trial. We affirm.

## FACTS

Around noon on December 6, 1983, Sherry and Glenn Jeffries discovered that someone had broken a window in their house and that their 1981 brown Arctic Pantera snowmobile and a pair of snowmobile mittens were missing. Police investigators traced very distinctive footprints left in the snow to a road where they abruptly ended. Jeffries and a friend, Bob Knowles, followed the snowmobile tracks across Gull Lake. A fisherman in the area, Tyrone Rogers, told them that about one hour earlier he saw Gravley, his second cousin, driving a snowmobile that matched the description of Jeffries' which Gravley claimed he and another person had purchased for $500 and a car.

Another witness reported that the snowmobile was parked outside a bar. After identifying the snowmobile, Jeffries and Knowles confronted Gravley, who was sitting inside the bar with Jeffries' snowmobile mittens in front of him. Gravley told Jeffries he had found the snowmobile on Gull Lake and he didn't know anything about the gloves. A bar employee overheard Gravley offer to sell the snowmobile to the bartender.

When Knowles called the sheriff's office, Gravley left the bar and started running toward the lake. The officers, on arrival, noticed the footprints matched the prints found around the Jeffries' home.

Gravley was subsequently arrested. The Chief of Police read Gravley his *Miranda* rights from a standard *Miranda* card. Gravley initially chose not to speak but later informed the arresting officers that he found the snowmobile on Gull Lake.

A BCA crime laboratory analyst testified that based on the size and shape of the prints found outside Jeffries' home, the shoes seized from Gravley could have made the footprints. Gravley was convicted on two alternative counts of burglary in the second degree, Minn.Stat. § 609.582, subds. 2(a) and 2(d) (Supp.1983), and one count of felonious theft, Minn.Stat. § 609.52, subd. 2(1) (1982). He was sentenced to concurrent prison terms of 23 and 13 months.

## ISSUES

1. Were statements made by Gravley following his arrest properly admitted into evidence?

2. Was the evidence sufficient to convict Gravley of burglary and theft?

3. Did the trial court abuse its discretion in ruling the State could impeach Gravley with a prior felony conviction?

4. Did the prosecutor commit misconduct during final arguments which warrants a new trial?

## ANALYSIS

### I.

Gravley claims statements he made to arresting officers (i.e. that he found the snowmobile on Gull Lake) following his arrest should have been suppressed because the State failed to show a valid waiver of his *Miranda* rights.

Both arresting officers testified that Chief Bukovich read Gravley his *Miranda* rights from a standard *Miranda* card. Gravley initially chose not to speak but immediately changed his mind. The record supports the omnibus court's finding that Gravley was read his rights, understood them and knowingly, voluntarily and intelligently waived them. *State v. Linder*, 268 N.W.2d 734, 735 (Minn.1978).

### II.

Gravley claims the evidence was insufficient. This contention is without merit. The BCA's footprint analysis and the fact that Gravley was in possession of the stolen snowmobile were sufficient to convict Gravley of burglary and theft. Additionally, Gravley's assertion of ownership and his offer to sell the snowmobile was sufficient to show an intent to permanently deprive the owner of possession of the snowmobile. That in itself was sufficient to establish theft.

### III.

Gravley chose not to testify, contending the trial court's pre-trial ruling that the state could impeach him with a 1979 felony theft conviction, if he chose to testify, had an unconstitutional "chilling" effect on his right to testify and, as such, constituted an abuse of discretion. Rule 609(a) of the Minnesota Rules of Evidence allows the use of prior felony convictions for impeachment purposes. Under the balancing test adopted in *State v. Jones*, 271 N.W.2d 534, 537–38 (Minn.1978), we find no abuse of discretion here.

### IV.

Gravley contends the prosecutor committed misconduct in closing arguments which denied him a fair trial. We disagree. Gravley waived his right to have this issue considered on appeal because defense counsel failed to object or seek a cautionary instruction at the time of argument. *State v. Kline*, 306 N.W.2d 132, 133 (Minn.1981); *State v. Rose*, 353 N.W.2d 565, 573 (Minn.Ct.App.1984). Even if there was no waiver, the trial court properly instructed on the burden of proof and that the jury should use only the evidence admitted. *State v. Ture*, 353 N.W.2d 502, 517 (Minn.1984). Any error that may have been committed was, at most, harmless considering the content of closing argument and the overwhelming evidence against Gravley. *State v. Caron*, 300 Minn. 123, 128, 218 N.W.2d 197, 200 (1974).

### V.

Gravley asserts that he was denied a fair trial when the State allegedly lost the tape of an initial interview conducted between Chief Bukovich and Tyrone Rogers. That tape never arrived at the sheriff's office nor was it ever placed in the possession of the State. A second interview was conducted and taped, a copy of which was provided to Gravley's counsel. There was no violation of a discovery rule and there was no other error which would warrant a new trial.

## DECISION

Gravley received a fair trial and was properly found guilty of burglary in the second degree and theft.

Affirmed.