STATE of Minnesota, Respondent,

v.

Paul C. TAYLOR, Appellant.

No. C1–84–1537.

Court of Appeals of Minnesota.

April 9, 1985.

Review Denied June 14, 1985.

Hubert H. Humphrey, III, Atty. Gen., Janet A. Newberg, Sp. Asst. Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted County Atty., Rochester, for respondent.

C. Paul Jones, Minn. State Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Appellant Paul C. Taylor was convicted by a jury of criminal sexual conduct in the third degree in violation of Minn.Stat. § 609.344(d) (1984) for entering the complainant's room and engaging in sexual intercourse with her while she was asleep. Taylor claims the evidence was insufficient, the prosecutor committed misconduct in closing argument, and that he was improperly impeached with a prior conviction. We affirm.

## FACTS

The State's evidence showed that Taylor moved into room 16 of the Broadway Square Hotel in Rochester, Minnesota, in November 1983. He later moved from room 16 to room 24. The victim, B.E., moved into room 16 on February 28, 1984.

On March 7, 1984, B.E. and her boyfriend returned to her room at about 7:00 p.m. She found a note under her door written by Taylor, implying that he wanted to have sex with her. Taylor had previously written about ten notes to B.E., all expressing either his desire to have sex with her or his anger that she did not come straight home from work. She testified that these other notes were in a trash can in her room on March 7.

After her boyfriend left, B.E. went to sleep and around midnight woke up and found someone on top of her engaging in sexual intercourse with her. Upon realizing the individual was not her boyfriend but Taylor, she screamed, pushed him to the floor, and told him to get out. Taylor attempted to calm her and said, "I'm going to jail tomorrow; can I shake your hand goodbye?" Taylor then left, and the door locked automatically. B.E. had no telephone and was too frightened to leave her room, so she went back to sleep.

About an hour later, she woke up and found Taylor, wearing a blue bathrobe, trying to crawl into bed with her. She screamed, and Taylor pulled a knife out of his pocket, pointed it toward himself, and said, "If you hate me that much, why don't you stab me?" B.E. told Taylor to get out. Taylor then said, "Next time I see you on the street, I'm going to kick the sh— out of you along with your girlfriend down the hall," and left.

B.E. went to work that morning and after talking to friends there, later called the police. The notes Taylor had written were missing from the trash can in her room. When Taylor was arrested on March 9, he told police officers there was no way he could have gained access to B.E.'s room; however, an officer observed him trying to remove a key from his key ring. Taylor's key ring contained two room keys to the Broadway Square Hotel, one for room 24 and the other for his former room, 16, where B.E. lived at the time of the offense. This second key unlocked B.E.'s door.

Taylor testified and admitted sending notes to B.E. He denied being in her room the night of March 7–8. Taylor was acquitted of burglary charges and convicted of criminal sexual conduct in the third degree, for which he was sentenced to the presumptive sentence of 41 months imprisonment.

## ISSUES

1. Was the evidence sufficient to sustain appellant's conviction for third-degree criminal sexual conduct?

2. Was appellant denied a fair trial because of prosecutorial misconduct in closing argument?

3. Was appellant properly impeached with a prior conviction?

## ANALYSIS

### I

■ B.E.'s affirmative testimony is sufficient to sustain Taylor's conviction for engaging in sexual penetration knowing the complainant was physically helpless (asleep). Although corroboration is not required, *see* Minn.Stat. § 609.347, subd. 1 (1984), we note that B.E.'s testimony was greatly corroborated by Taylor's own testimony that he sent her several notes and by the evidence that he had a key to her room and was attempting to remove it from his key ring after he was arrested.

### II

■ At the end of his closing argument the prosecutor stated:

That's the case you're going to have to take with you into the jury deliberation room and it's a very important job that you've got. *It's a very important job you've got for the State and for [B.E.].* I want you to use your common sense and reason in evaluating the testimony

of this defendant when you are going through the elements, when you are listening to the court's instructions. Listen to them carefully. I want you to apply your common sense and reasoning and I think if you do that in this case and apply it to the facts that you'll convict this defendant of both charges.

(Emphasis added). This argument was objected to, and the trial court gave the following curative instruction:

I instruct you that the county attorney in his final summation alluded to the fact that [B.E.] wanted the defendant convicted. And I must instruct you that—that the crime that's charged is because it is deemed by the State of Minnesota by its people that the—that the claimed conduct is offensive enough to the community, to the people of the State of Minnesota, to define it as a crime. Thus, the prosecution for a crime is not an action on behalf of any individual, including the person who is the victim of a crime. The crime is because it's a transgression, a violation, of the standards of the State of Minnesota that has been defined by the people through legislative act, statute. You, therefore, must not in your deliberations consider the issue of whether or not there's a crime committed in terms of personal retribution on the part of any individual, including the victim.

I instruct you that any question of—of remedy for a victim of a crime is properly the subject of a separate civil action, whether it's a sex act or an assault or—or any type of automobile accident the—in which a person claims to be damaged. One can have the criminal conduct prosecuted and one can have the civil conduct pursued. And the proper action for the individual's remedy is the civil action. Thus, in this case while the purpose of the criminal action is to determine whether or not the conduct as defined criminal has occurred and if so that it has offended the standard set forth by the people of Minnesota, including the victim, but not a personal retribution for any one person.

The State concedes that the prosecutor's comment was improper because it invited the jurors to put themselves in the shoes of the victim. *See, e.g., State v. Rose*, 353 N.W.2d 565, 568 (Minn.Ct.App.1984). However, this comment was brief, was properly cured by instructions, and was harmless error under the standards set out in *State v. Caron*, 300 Minn. 123, 127–28, 218 N.W.2d 197, 200 (1974).

### III

■ Taylor was impeached by a 1982 conviction for attempted kidnapping. This was admissible under Minn.R.Evid. 609 and the standards set out in *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978). We find no abuse of discretion by the trial court.

### DECISION

Appellant's conviction of criminal sexual conduct in the third degree is affirmed.

Affirmed.