**STATE of Minnesota, Respondent,**

**v.**

**Mark Steven HALL, Appellant.**

**No. CX–86–374.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

Review Granted Oct. 17, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., James B. Florey, Asst. Co. Atty., Virginia, for respondent.

Mark C. Weir, Greenberg, Colosimo & Patchin, Ltd., Virginia, for appellant.

Heard, considered and decided by POPO-VICH, C.J. and WOZNIAK and RANDALL, JJ.

### OPINION

POPOVICH, Chief Judge

Mark Hall appeals from his conviction of first degree criminal sexual conduct con-

tending the trial court abused its discretion by admitting expert testimony about the behavioral characteristics of sexually abused adolescents. We reverse and remand for a new trial.

## FACTS

On July 25, 1985 appellant was charged with one count each of first degree and third degree criminal sexual conduct under Minn.Stat. §§ 609.342(b) and 609.344(b) (1984). The complaint alleged appellant sexually assaulted W.A.P., a 14–year–old babysitter. A St. Louis County District Court jury found appellant guilty of first degree criminal sexual conduct and he was sentenced to imprisonment for 43 months.

At issue is the testimony of Dr. Claire Bell, a clinical psychologist at the Range Mental Health Center and an expert on sexual abuse. The prosecutor sought to elicit her testimony on the typical behavioral characteristics of sexually abused adolescents and contended that evidence was admissible under *State v. Myers*, 359 N.W.2d 604 (Minn.1984).[1] Defense counsel objected to Dr. Bell's expert testimony and argued that it was inadmissible under *State v. Saldana*, 324 N.W.2d 227 (Minn. 1982), and would be unduly prejudicial to appellant.

The trial court found Dr. Bell was a qualified expert and ruled that her testimony was admissible:

I think her testimony would be helpful to the Jury in this case. In the exercise of the discretion which I have to consider in this case, I'm persuaded that that kind of testimony would be helpful to a Jury to understand the conduct of the juveniles in sexual abuse cases. This is not an adult like in *Saldana*. This is a juvenile, a child. She's not seven years old like the victim in the *Myers* case, but I don't think a 14 year-old girl is like a 25 year-old woman either.

Dr. Bell then testified she is familiar with typical characteristics or "profiles" of victims of sexual abuse. She said those profiles vary greatly with age and identified three distinct age groups: children up to age 11 or 12; adolescents from age 11 or 12 to 18 or 19; and adults. Dr. Bell also said there is "some variation in characteristics" in cases involving intrafamilial sexual abuse. Upon objection by defense counsel, the trial court instructed Dr. Bell to confine her testimony to non-intrafamilial sexual abuse.

Dr. Bell then said the primary characteristics of sexually abused adolescents include: nightmares; restriction of activity; a sense of betrayal; sexual problems such as fear of men; or depression. In response to a question, Dr. Bell said:

one of the characteristics of a sexual abuse victim is that reporting is typically delayed. It's quite unusual to have a victim of sexual abuse or sexual assault report the incident immediately.

Fear, humiliation, denial, and unfavorable treatment by "the system" contribute to the failure to report, and a victim who knows the assailant may be reluctant to get the assailant in trouble or fear retaliation. Dr. Bell mentioned FBI statistics and her own experience in testifying that the reporting of sexual assaults ranges from 30 days to "years" with "very, very, very few" reported within the first 30 days.

In response to another question, Dr. Bell testified that it is "not at all uncommon" for a victim to have continued contact with an assailant because of fear and a "feeling of powerlessness." When asked if there were any "other common characteristics," Dr. Bell said that "an adolescent will often do some things differently than an adult" and was "more likely to, for instance, tell a very close friend" about a sexual assault. She said that such behavior was "not as likely" to occur with a young child victim or an adult. Dr. Bell does not know W.A.P. and has never examined or treated her.

On cross-examination, Dr. Bell said she had no personal experience of a victim who had fabricated a story, but admitted that

---

1. Dr. Bell was also the expert witness in *State v. Myers*, 359 N.W.2d 604 (Minn.1984).

there were "rare instances" of fabrication. She also said such a person was likely to have a "severe character disorder" and a "significant history of antisocial behavior."

## ISSUE

Did the trial court commit reversible error by admitting expert testimony regarding the behavioral characteristics of sexually abused adolescents?

## ANALYSIS

Expert testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Minn.R.Evid. 702.

> The basic requirement of Rule 702 is the helpfulness requirement. If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test.

*State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980).

> If the jury is in as good a position to reach a decision as the expert, expert testimony would be of little assistance to the jury and should not be admitted. Expert testimony may also be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury.

*Saldana*, 324 N.W.2d at 229 (citing Minn. R.Evid. 403).

■ The admission of an expert opinion generally rests within the discretion of a trial court and a reviewing court will not reverse that determination unless there is an apparent error. *See Myers*, 359 N.W.2d at 609 (Minn.1984) (citing *Hestad v. Pennsylvania Life Insurance Co.*, 295 Minn. 306, 204 N.W.2d 433 (1973)). A conviction may be reversed only if the defendant shows both that an error was made in the trial court's reception of evidence and the error substantially influenced the jury to convict him. *State v. Loebach*, 310 N.W.2d 58, 64 (Minn.1981).

■ Appellant contends the trial court erred in admitting expert testimony on the behavior of sexually abused adolescents because that testimony was not helpful to the jury. Appellant argues the erroneous admission of that evidence resulted in prejudice which denied him a fair trial. Appellant compares this case to the *Saldana* decision, while the State contends Dr. Bell's testimony was properly admitted under *Myers*.

*Saldana* involved a prosecution for first degree criminal sexual conduct under Minn. Stat. § 609.342(e)(i) (1980). At trial the defendant admitted having sexual intercourse with the victim, but claimed that it was consensual. 324 N.W.2d at 229. To rebut that claim, the State presented expert testimony from a counselor of sexual assault victims who had met with the victim over a ten-week period. The expert discussed "rape trauma syndrome" or "the stages that a rape victim typically goes through" and described typical behavior of victims after a rape. *Id.*

The expert also described the victim's reactions as she had observed them. She said it was not unusual that the victim did not report the crime until the following day and that many rape victims never report the crime. *See id.* She then stated her definite belief that the victim had been sexually assaulted and had not fantasized or "made it up." *Id.*

On appeal, the supreme court held that the admission of expert testimony on "rape trauma syndrome" was reversible error:

> On the facts of the case before us, such testimony is of no help to the jury and produces an extreme danger of unfair prejudice. The factual question to be decided by the jury is whether the alleged criminal conduct occurred. It is not necessary that [the victim] react in a typical manner to the incident. [The victim] need not display the typical post-rape symptoms and behavior of rape victims to convince the jury that her view of the facts is the truth.

* * * The jury must not decide this case on the basis of how most people react to rape or on whether [the victim's] reactions were the typical reactions of a person who has been a victim of rape. Rather, the jury must decide what happened in *this case,* and whether the elements of the alleged crime have been proved beyond a reasonable doubt.

*Id.* at 229–30 (emphasis in original).

The court felt that "syndrome" or "profile" evidence has not attained a level of reliability "that surpasses the quality of common sense evaluation present in jury deliberations." *Id.* at 230. Such expert testimony is unfairly prejudicial to the defendant because it creates "an aura of special reliability and trustworthiness." *Id.* This danger of prejudice outweighs any probative value because "jurors of ordinary abilities are competent to consider the evidence and determine whether the alleged crime occurred." *Id.* Finally, the court was concerned that admitting "profile" evidence would lead to a "battle of experts" and invade the fact-finding function of the jury. *Id.*

Respondent argues *Saldana* supports the admission of "profile" evidence in "unusual cases" such as a "sexual assault case where the alleged victim is a child or mentally retarded." *Id.* at 231 (citing *United States v. Barnard,* 490 F.2d 907, 913 (9th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974)). But that portion of *Saldana* dealt with an expert's opinion that the victim was credible and had not fantasized the rape, not with "profile" evidence on the typical behavior of victims. *See id.* Further, the example given of such an "unusual case" involved the opinion of an examining pediatrician on a retarded child's ability "to differentiate between reality and fantasy." *Id.* (citing *Commonwealth v. Carter,* 9 Mass.App.Ct. 680, 403 N.E.2d 1191 (Mass.App.Ct.), *aff'd,* 383 Mass. 873, 417 N.E.2d 438 (Mass.1981)). *Saldana* held expert testimony concerning a "syndrome" or "profile" exhibited by victims of sexual assault is generally not help-

ful to a jury and is therefore inadmissible. *See id.* 324 N.W.2d at 230.

Here the trial court admitted the expert testimony in reliance on *State v. Myers,* 359 N.W.2d 604 (Minn.1984). The *Myers* court upheld the admission of expert testimony regarding the "emotional and psychological characteristics observed in sexually abused children." *Id.* at 609–10. In so doing, the court reaffirmed the principle set forth in *Saldana* that in most cases the credibility of a witness is solely within the province of the jury and the "possibility that the jury may be unduly influenced by an expert's opinion mitigates against admission" of opinion evidence affecting the credibility of a witness. *Id.* at 610. But the *Myers* court then recognized an exception to this general rule in those cases where the victim of sexual abuse is a young child:

The nature, however, of the sexual abuse of children places lay jurors at a disadvantage. Incest is prohibited in all or almost all cultures, and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse. If the victim of a burglary failed to report the crime promptly, a jury would have good reason to doubt that person's credibility. A young child subjected to sexual abuse, however, may for some time be either unaware or uncertain of the criminality of the abuser's conduct. * * * By explaining the emotional antecedents of the victim's conduct and the peculiar impact of the crime on other members of the family, an expert can assist the jury in evaluating the credibility of the complainant.

*Id.* The court observed that such expert testimony could be helpful to the jury in those unique cases where a young child describes sexual abuse which has occurred "over an ill-defined time frame" and who may be "an uncertain or ambivalent accuser" and possibly recant prior accusations:

Background data providing a relevant insight into the puzzling aspects of the

child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children, *and particularly of children as young as this complainant.*

*Id.* (emphasis added). In summary, *Myers* only allowed admission of "profile" evidence in cases involving: (1) the intrafamilial sexual abuse (2) of a young child where (3) the expert's knowledge would help the jury to evaluate the credibility of the complainant. *See id.*

We do not believe the facts of this case bring it within the confines of the very narrow exception created by *Myers.* First, this was not a prosecution for intrafamilial sexual abuse of a continuing nature: appellant was charged with a single incident of sexual assault. Dr. Bell herself testified that the "profile" of victims of intrafamilial sexual abuse is dissimilar from other victims of sexual abuse. Further, the trial court specifically limited Dr. Bell's expert testimony to "profile" evidence *not* related to intrafamilial sexual abuse. *Contra Myers,* 359 N.W.2d at 606–10 & nn. 1–2.

Second, the complainant here could not be described as a young child: W.A.P. was fourteen years old at the time of the alleged sexual assault. A physician who examined her for evidence of that assault stated that she was "functionally" and "physiologically" an adult woman. Dr. Bell also distinguished between young children, adolescents, and adults in explaining the differing "profiles" of victims of sexual abuse and limited her testimony solely to the adolescent age group.

Finally, this case did not have the kind of confusing and contradictory testimony often involved in a prosecution for the continuing intrafamilial sexual abuse of a very young child. *See Myers,* 359 N.W.2d at 610. W.A.P. did not give conflicting versions of the alleged sexual assault and never recanted her allegations. *Compare*

*State v. Soukup,* 376 N.W.2d 498, 500 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn.1985). The exact date and time of the incident and all the surrounding circumstances were completely described in her detailed testimony.

The only aspect of W.A.P.'s testimony that might have been confusing to the jury was the fact she did not promptly report the assault to her parents and the authorities. But W.A.P. told several friends and a relative that she had been raped soon after the alleged assault, which occurred on June 28th but was not reported to police until July 20th. W.A.P. testified that she kept babysitting in the interim because appellant had threatened to kill her if she told. W.A.P. finally decided to tell her parents what had happened when she was faced with the possibility of a second assault.

Under these circumstances, we do not believe expert testimony regarding the typical reporting of sexual assaults was helpful to the jury.[2] Any delay in reporting was brief and W.A.P. gave a reasonable, believable explanation for that delay. In contrast, Dr. Bell testified that "very, very, very few" victims report sexual assaults within thirty days. This statement, which was supported by a vague reference to "FBI statistics," seems counterintuitive and could confuse a jury.

Here a 14–year–old babysitter alleged that she was sexually assaulted by appellant. Appellant denied the assault occurred and offered an alibi. *Compare Saldana,* 324 N.W.2d at 229. This case turned on the witnesses' credibility because there was no physical evidence that an assault had occurred. *See id.* at 232. Expert testimony on the "profile" of adolescent victims of sexual assault only deflected the jury's attention from their sole function: evaluating the credibility of these witnesses and their testimony. *See id.* at 229–30. For these reasons, we hold that the trial court's erroneous admission of expert testimony

2. We note that in similar cases the State has been able to obtain convictions without the use of "profile" evidence. *See State v. Dudrey,* 330 N.W.2d 719 (Minn.1983); *State v. Bird,* 292 N.W.2d 3 (Minn.1980); *see also State v. Rose,* 353 N.W.2d 565 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn.1984).

constituted reversible error and appellant is entitled to a new trial.

### DECISION

The trial court committed reversible error by admitting expert testimony on the common characteristics of sexually abused adolescents which substantially influenced the jury and denied appellant his right to a fair trial.

Reversed and remanded for a new trial.