**STATE of Minnesota, Respondent,**

v.

**Ken Morris GARDEN, Appellant.**

**No. C1–86–1378.**

Court of Appeals of Minnesota.

May 5, 1987.

Review Denied June 25, 1987.

---

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Mark S. Rubin, Asst. Co. Atty., Duluth, for respondent.

C. Paul Jones, Public Defender, Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

NIERENGARTEN, Judge.

Ken Garden was convicted of criminal sexual conduct in the second degree, Minn. Stat. § 609.343, subd. 1(g) (1984), for acts committed with his 12–year-old daughter. He contends the trial court erred in admitting expert testimony about emotional and psychological characteristics of sexually abused children and that the evidence was insufficient. We affirm.

## FACTS

On January 21, 1986 Garden pleaded guilty to misdemeanor assault against his wife. Garden was excluded from the home by court order and denied visitation with the couple's twelve year old daughter A.G. A new hearing was scheduled for February 24, 1986.

In the meantime, on February 5, 1986, Janet spoke with a social worker at the St. Louis County Initial Intervention Unit and mentioned that A.G. had alluded to bad dreams about Garden in the fall of 1985 and in early 1986, indicating possible sexual abuse. The next day A.G. met with the social worker and told her that Garden had come into her bedroom when she was half asleep and had touched her in her private areas. She did not recall whether Garden touched her on top or underneath her pajamas. The social worker prepared a report and referred the matter to law enforcement officials.

On February 7, 1986, A.G. told a police officer that in mid-November 1985 Garden entered her room, put his hand under her pajamas and her panties and rubbed her between the legs in her private area. A.G. told the officer that Garden asked her while he was doing this if it was what she really wanted, and A.G. told him "no." She told him something similar had happened in mid-summer 1985. She indicated these incidents may have happened several times before, but at the time she thought she was dreaming because she was sleeping.

Janet initiated divorce proceedings in mid-February. Custody was contested. Garden was charged with sexual abuse of A.G. on March 4, 1986.

At the May 1986 trial A.G. testified that Garden came into her bedroom twice a month, sat on her bed and touched her in her lower private area. She said Garden asked, "Is this what you want?" and she said, "No." She stated she did not say anything and did not mention the allegation until after Garden had left the home. She testified that when she talked to the social worker, she did not want Garden back into the home. A.G. could not remember whether the alleged touching was over or under her pajamas.

Over defense's objection, a clinical psychologist testified of a meeting with A.G. on May 8, 12, and 19. She testified that A.G.'s response was similar to other sexually abused children. She also testified about traits of other abused children who, like A.G., attempted to disassociate themselves from the conduct, delayed reporting, disclosed the allegations of misconduct during a separation period, and recalled more details on further questioning. The psychologist noted that A.G. had expressed concern about custody arrangements because of the upcoming divorce proceedings.

Garden consistently denied abusing A.G. and testified to this at trial. The jury convicted Garden of criminal sexual conduct in the second degree but found that his conduct did not involve acts committed over an extended period of time.

## ISSUES

1. Did the trial court commit reversible error by admitting expert testimony regarding the behavioral characteristics of sexually abused children?

2. Was the evidence sufficient?

## ANALYSIS

### I

Garden contends the psychologist's testimony about the characteristics of sexually abused children was inadmissible and that the error substantially influenced the jury to convict, requiring a new trial. *See State v. Loebach*, 310 N.W.2d 58, 64 (Minn.1981).

In *State v. Myers*, 359 N.W.2d 604 (Minn. 1984) the Minnesota Supreme Court upheld the admission of the same psychologist's testimony concerning the emotional and psychological characteristics she had observed in sexually abused children. *Myers* involved a 7–year-old victim. The court reaffirmed that generally the credibility of a witness is solely within the province of

the jury. *Id.* at 609–10; *see also State v. Saldana,* 324 N.W.2d 227, 229 (Minn.1982). The court, however, created an exception for sexually abused children. *Myers,* 359 N.W.2d at 610.

In *State v. Hall,* 392 N.W.2d 285 (Minn. Ct.App.1986) this court held that admission of expert testimony on typical behavioral characteristics of sexually abused *adolescents* was reversible error in a case involving a 14–year-old child. We found that the situation in *Hall* did not fit within the *Myers* exception and reversed Hall's conviction. In *Hall* we distinguished *Myers* on the grounds that (1) *Hall* did not involve intrafamilial sexual abuse, (2) *Hall* did not involve a young child because the victim was 14 at the time of the assault and was functionally and physiologically an adult woman, and (3) *Hall* did not have the kind of confusing and contradictory testimony often seen with young victims and, hence, the expert testimony was not needed to evaluate the credibility of the complainant. *Hall* is now on review in the supreme court.

■ We believe *Myers* applies in this case.

   (1) Here, unlike *Hall,* Garden is the father of A.G. and hence A.G. is an alleged victim of intrafamilial sexual abuse;

   (2) Here, unlike *Hall,* there was no testimony that A.G. was functionally or physiologically an adult woman;

   (3) Here, the psychologist's testimony was helpful in evaluating the credibility of A.G. At trial Garden tried to suggest that A.G. dreamt the episodes or fabricated them to get back at Garden. The psychologist's testimony helped the jury to understand that A.G.'s reactions were explainable and consistent with other victims of child sex abuse. A.G.'s testimony was not consistent or specific in detail as was the complainant's in *Hall.*

■ In this case, we find some of the elements of *Hall* and some of *Myers.* Con-

sequently, admission of an expert's opinion, generally discretionary with the trial court, *Myers,* 359 N.W.2d at 609, obviously would assist a jury. Note the following language of the supreme court in *Myers,*

> A young child subjected to sexual abuse, however, may for some time be either unaware or uncertain of the criminality of the abuser's conduct. As Dr. Bell testified, uncertainty becomes confusion when an abuser who fulfills a caring-parenting role in the child's life tells the child that what seems wrong to the child is, in fact, all right. Because of the child's confusion, shame, guilt, and fear, disclosure of the abuse is often long delayed. When the child does complain of sexual abuse, the mother's reaction frequently is disbelief, and she fails to report the allegations to the authorities. By explaining the emotional antecedents of the victim's conduct and the peculiar impact of the crime on other members of the family, an expert can assist the jury in evaluating the credibility of the complainant. *See State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983).

>    *    *    *    *    *    *

> In the case of a sexually abused child consent is irrelevant and jurors are often faced with determining the veracity of a young child who tells of a course of conduct carried on over an ill-defined time frame and who appears an uncertain or ambivalent accuser and who may even recant. Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children, and particularly of children as young as this complainant. *State v. Middleton, supra; State v. Kim,* 64 Hawaii 598, 645 P.2d 1330 (1982). *See also State v. Loss,* 295 Minn. 271, 280, 204 N.W.2d 404 (1973) (battered child syndrome); *Ibn-Tamas v. United States,* 407 A.2d 626 (D.C.Cir. 1979) (battered wife syndrome).

*Myers,* 359 N.W.2d at 610. In this case the trial court did not abuse its discretion in allowing the psychologist to testify about the emotional and psychological characteristics commonly observed in sexually abused children.[1]

## II

Garden contends the evidence was insufficient because A.G.'s testimony was vague, inconsistent, improbable, of suspect truthfulness and uncorroborated, and probably fabricated because Garden and his wife were engaged in divorce proceedings with contested custody. Weighing a witness's credibility is for the jury, not a reviewing court. *State v. Daniels,* 361 N.W.2d 819, 826 (Minn.1985); *State v. Reichenberger,* 289 Minn. 75, 79, 182 N.W.2d 692, 695 (1970). A.G.'s testimony was not entirely consistent and was more detailed than prior statements. It was consistent, therefore, with the pattern identified by the psychologist, that it was not uncommon for victims of child sex abuse to reveal more details as they become more confident and as they feel they are being supportive. The jury apparently believed her allegations had some basis in truth. Minor inconsistencies between a victim's testimony and her previous statements are not ground for reversal. *State v. Beard,* 380 N.W.2d 537, 541 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. Mar. 3, 1986).

Garden also claims that A.G.'s testimony was uncorroborated. There is no requirement that A.G.'s testimony be corroborated. Minn.Stat. § 609.347, subd. 1 (1984). We conclude that in viewing the evidence in the light most favorable to the verdict the jury could find beyond a reasonable doubt that Garden was guilty of criminal sexual conduct in the second degree. *State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981).

1. In *State v. McCoy,* 400 N.W.2d 807 (Minn.Ct. App.1987), *pet. for rev. denied,* (Minn. Mar. 25, 1987) this court recently upheld a conviction based, in part, on expert testimony regarding the typical behavioral characteristics of sexually

## DECISION

Appellant's conviction for criminal sexual conduct in the second degree is affirmed.

Affirmed.

abused children in a case involving a 12–year-old witness who alleged she had been sexually abused by her father since she was six or seven years old.