STATE of Minnesota, Respondent,

v.

Jerry HELTERBRIDLE, Appellant.

No. 50468.

Supreme Court of Minnesota.

Oct. 31, 1980.

Rehearing Denied Dec. 2, 1980.

Meshbesher, Singer & Spence and Carol Grant, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and John H. Daniels, Jr., Sp. Asst. Attys. Gen., St. Paul, Roger Van Heel, County Atty., St. Cloud, for respondent.

C. Paul Jones, State Public Defender, Robert Streitz, Asst. Public Defender, Minneapolis, Amicus Curiae.

AMDAHL, Justice.

Defendant was found guilty by a district court jury of a charge of aggravated robbery, Minn.Stat. § 609.245 (1963), and was sentenced by the trial court to a prison term of 1 year and 1 day to 20 years. On this appeal from judgment of conviction and

from the order denying a motion for a new trial defendant contends that the district court erred in (1) refusing to dismiss the prosecution on speedy trial grounds, (2) refusing to admit expert testimony on the unreliability of eyewitness identification testimony, and (3) instructing the jury that the only real issue for them to decide was the issue of identification. We affirm.

The robbery, of a clerk at a small grocery store in St. Cloud, occurred on the evening of December 4, 1976. The robber was also seen by a customer who entered the store as the robber was leaving. The clerk described the robber as being light haired and having sideburns and a "very noticeable" mustache.

Nine months after the robbery, on September 20, 1977, the clerk was in a local bar when she saw a man she recognized as the robber. She stayed in the bar until the man left, then went to the police station and reported what had happened.

After investigating, police put together a photographic display containing defendant's picture. The clerk positively identified defendant's picture as that of the robber. She also identified defendant at a lineup. The customer was subsequently shown a photographic display containing defendant's picture and he also identified defendant. At trial the clerk positively identified defendant, saying she had no doubt he was the robber. The customer was "not positive" but "considerably sure" that defendant was the man he had seen leaving the store.

Roger Malikowski, an inmate at the state reformatory, testified that around 9:00 one evening in early December 1976, defendant and his friend Steven Fischer came to the Malikowski trailer and the defendant said he had "done one" at the grocery store in question using a carbon dioxide pistol. Malikowski's ex–wife, who had been present during the conversation, also testi-

fied at trial concerning defendant's admission. She added that defendant had said he had used mascara to darken his mustache.

Clint Taylor, an inmate at the state prison, testified that he had met defendant in jail after defendant was arrested for this offense in October 1977 and that defendant had told him he had robbed the store. Taylor also testified that he thought defendant had said he was going to have his girl friend say that he had a mustache and sideburns, but Taylor admitted that defendant may have said the opposite, that she was going to say he did not have a mustache or sideburns.

1. Defendant's first contention on appeal relates not to the delay in arresting him [1] but to the delay in bringing him to trial after he was formally charged.

▮▮▮ Defendant was arrested and formally charged in October of 1977. His trial did not commence until March of 1979. In other words, there was a delay of about 17 months in bringing him to trial. This delay was clearly sufficient to trigger further inquiry into the other relevant factors mentioned in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in other words, (a) reason for delay, (b) defendant's assertion of his right, and (c) prejudice to defendant. However, after considering all these facts, the details of which we will not set forth here, we conclude that the trial court did not err in refusing to dismiss the prosecution on this ground. Suffice it to say, we think delays of this length are serious and we do not approve of delays of this kind. But the delays were not entirely attributable to the state, the defendant could have been more vigilant in asserting his right, and, most importantly, it does not appear, on balance, that defendant was prejudiced by the delays.

---

1. As the United States Supreme Court held in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), the due process clause protects against preaccusation delays that are planned by the prosecution for the purpose of gaining a tactical advantage if the delay results in actual prejudice to the defendant. Here the preaccusation delay resulted entirely from the fact that the police had no probable cause to charge defendant until October of 1977.

2. The next issue is one which this court has not addressed before: admissibility in a criminal trial of expert testimony concerning the scientific knowledge relating to the unreliability of eyewitness identification.

The expert which the defense hired is a recognized expert and may well be the leading expert in that field. Thus, the issue is not whether he was qualified, but whether expert testimony of this sort was the kind of expert testimony which the trial court had no discretion to exclude.

Minn.R.Evid. 702 provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ The basic requirement of Rule 702 is the helpfulness requirement. If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test. In determining admissibility, of course, the trial court also may rely on those considerations expressed in Minn.R.Evid. 403. Thus, the court may exclude the testimony if the court concludes that it will confuse the jury. Needless to say, the trial court has broad discretion in deciding whether testimony by a qualified expert should be received.[2]

Apparently there are trial courts around the country which in criminal cases have admitted testimony of the sort which was offered by defendant, but defendant has not cited and we have not found any reported appellate court decisions which support defendant's contention that the district court abused its discretion in refusing to admit the evidence. Stated differently, appellate courts have addressed the issue a number of times and their decisions appear to be uniformly adverse to the position advanced by defendant on appeal. *See, United States v. Fosher,* 590 F.2d 381 (1st Cir. 1979) as illustrative of the approach the courts have taken.

■ In holding that the trial court did not abuse its discretion in refusing to admit this expert testimony, we do not mean to suggest that we think the broader issue of reliability of eyewitness identification testimony is unimportant. Rather, we simply believe that requiring trial courts to admit this sort of evidence is not the answer. There is no one answer to the problem, but there are a number of safeguards to prevent convictions of the innocent based on unreliable eyewitness identification. Prosecutors do not have to prosecute if they think the evidence is unreliable. Trial courts may suppress identification testimony if the identification procedures rendered the evidence unreliable. Effective cross–examination and persuasive argument by defense counsel are additional safeguards. Proper instruction of the jury on the factors in evaluating eyewitness identification testimony and on the state's burden of proving identification beyond a reasonable doubt are other safeguards. The requirement of jury unanimity is also a safeguard. Finally, this court has the power to grant relief if it is convinced that the evidence of a convicted defendant's guilt was legally insufficient.

■ 3. Defendant's final contention is that the trial court erroneously informed the jury in its instructions that the only real issue for the jury to decide was identification, when defendant contends that in reality there was as a matter of law insufficient evidence that a gun had been used.

First of all, there was sufficient evidence that a gun was used. In fact, defense counsel, in informing the court that he did not want simple robbery submitted to the jury, stated that he felt it clearly was an aggravated robbery and that the only issue was who did it. When the court agreed to

---

**2.** For a more detailed discussion, *see* 3 D. Louisell & C. Mueller, *Federal Evidence* § 382 (1979), and 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702(01) (1978).

submit only aggravated robbery the court said, "We will submit it on the matter of aggravated robbery with the understanding that the act that occurred on December 4, 1976, was an act of aggravated robbery but the issue here is one of identification." To this defense counsel replied, "That's correct." Under the circumstances, we believe defense counsel had fair warning that the trial court was going to generally inform the jury that the issue of identification was the real issue for them to decide, and defendant, by not objecting to the instruction when it was given, should be deemed to have forfeited the issue for consideration on appeal. *See State v. Carlson*, 268 N.W.2d 553 (Minn.1978) (trial court should be extremely reluctant to remove issues concerning the sufficiency of evidence of certain elements from the jury but a defendant can forfeit his right to complain on appeal, as when a defendant has admitted some elements to the jury and the trial court then states that those matters have been admitted).

Affirmed.