**STATE of Minnesota, Respondent,**

**v.**

**James Alan MYERS, Appellant.**

**No. C8–82–1031.**

Supreme Court of Minnesota.

Dec. 21, 1984.

C. Paul Jones, Public Defender Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., Duluth, Donovan W. Frank, Gary J. Pagliaccetti, Asst. St. Louis County Attys., Virginia, for respondent.

COYNE, Justice.

On April 15, 1982, a jury found James Alan Myers guilty of criminal sexual conduct in the second degree, Minn.Stat. § 609.343(a) (1982) (sexual contact with a complainant under 13 years of age by an actor who is more than 36 months older than the complainant). Pursuant to the judgment of conviction, Myers was sentenced to a 35-month term of imprisonment. On appeal defendant contends that the evidence was insufficient to support conviction, that the refusal to permit defendant to testify to occasions on which the complainant may have lied was a deprivation of his constitutional right to confront his accuser, and that the trial court erred in admitting expert psychological testimony describing the behavior and symptoms typically exhibited by sexually abused children and expressing the opinion that the complainant's allegations were not fabricated. We affirm.

Myers was convicted of having criminal sexual contact between August 1980 and July 1981 with the young daughter of the woman with whom he was living. The particular incident which led to these proceedings occurred one morning in either November or December of 1980, when complainant was seven years old. On that morning, while Myers was preparing

breakfast in the kitchen of their two-story home, he told complainant to come downstairs from her bedroom and help him. Complainant initially refused but complied when Myers threatened to spank her. Complainant's mother testified that she was in bed when Myers called her daughter and that, because it was quiet downstairs, she got out of bed to see what was happening. She stated that when she arrived downstairs, Myers was sitting on the living room sofa and her daughter was standing directly across the room in the doorway between the living room and kitchen. The mother took complainant upstairs to her bedroom and asked her what had happened. Complainant first responded that she did not know, but ultimately she said that Myers did things to her like he did to her mother. The mother then confronted Myers who said he did not know what the complainant meant.

Some time after this incident the mother told her sister of the complainant's allegations. It was not, however, until several months later, on September 15, 1981, when the complainant's maternal uncle contacted the St. Louis County Department of Social Services, that the authorities were notified of the possibility of abuse. On the following day, Lynn Halenbeck, a St. Louis County Social Worker, talked to the complainant at her school. Halenbeck testified that during the course of their conversation, complainant informed her that Myers would sometimes come into her bedroom at night and touch her on her "chest" and between her legs. Upon further questioning by Halenbeck, complainant detailed the manner in which Myers molested her. Halenbeck also stated that she deduced from complainant's statements that Myers had commenced abusing her when she was six and that the child could not conceptualize the difference between sexual penetration and contact. On the basis of this informa-

tion, Halenbeck contacted the county attorney's office, and thereafter obtained a court order removing complainant from her home. On October 6, 1981, formal charges were filed against Myers.[1]

The state also presented the testimonies of Dr. John Mathers, an obstetrician and gynecologist who examined complainant on March 1, 1982, and of Dr. Clare Bell, a clinical psychologist at the Range Mental Health Center, who began treating complainant on December 11, 1981. Dr. Mathers testified that his physical examination of complainant revealed that her hymen was intact and that she was otherwise normal for a girl of her age. Dr. Mathers further explained that if there had been penetration there would have been scarring, but the absence of scarring was not inconsistent with pushing on the vagina or penetration through the outer lips.

Dr. Bell testified that commencing on December 11, 1981, she saw complainant on seven occasions in sessions each lasting at least one hour. Dr. Bell stated that in each of these sessions, complainant related the manner in which defendant abused her and that, while she continually added information, the child's allegations remained consistent.

The complainant, who was eight years old at the time of the trial, also testified and substantially repeated her earlier statements to Halenbeck and Bell. When questioned on cross-examination about the theft of some combs and money from a neighbor's house, complainant responded that she did not remember the incident. Finally, complainant testified on cross-examination that she was not happy when Myers commenced living with them.

Defendant testified at trial, denying the allegations of sexual abuse. Myers also sought to testify concerning an occasion when complainant had lied about stealing

---

1. Myers was originally charged with criminal sexual conduct in the first and second degrees, Minn.Stat. §§ 609.342(a), 609.343(a) (1982), and intrafamilial sexual abuse in the first and second degrees, Minn.Stat. §§ 609.3641, subd. 1(1), 609.3642, subd. 1(1) (Supp.1983). On April 2,

1982, the complaint was amended to dismiss the two counts of intrafamilial sexual abuse, and to add one count of attempted criminal sexual conduct in the first degree, Minn.Stat. §§ 609.342(a), 609.17 (1982).

some combs, but the testimony was excluded on the grounds that it constituted extrinsic impeachment evidence.

■ Defendant raises several issues which do not require much discussion. His initial contention, that the evidence was legally insufficient to support the verdict, is meritless. Our review of the record, particularly with regard to the young complainant's consistency in describing defendant's acts and her detailed description of the manner in which he perpetrated the abuse, convinces us that there was ample evidence to support the jury's verdict.

■ For the same reasons, we find no merit in the defendant's contention that corroboration was required for conviction. Minn.Stat. § 609.347, subd. 1 (1982), provides that in a prosecution for criminal sexual conduct the complainant's testimony need not be corroborated. Corroboration of an allegation of sexual abuse of a child is required only if the evidence otherwise adduced is insufficient to sustain conviction. *State v. Hesse*, 281 N.W.2d 491, 492 (Minn.1979). Hence, our determination that the evidence was legally sufficient to support the verdict disposes of any necessity for corroboration. Moreover, despite the absence of physical corroboration, the child's testimony was, to some extent, corroborated. Her mother's testimony regarding the morning incident in November or December of 1980 and the testimony of Halenbeck and Bell revealing the consistent and positive nature of the complainant's statements supported her allegations. *See State v. Wrightington*, 323 N.W.2d 793 (Minn.1982).

■ Neither is there any merit in the defendant's contention that the refusal to let him testify that the complainant had once lied about taking combs from a neighbor's house was a denial of his right under the sixth amendment of the United States Constitution to confront his accuser. Cross-examination is recognized as the principal means by which a defendant may test the credibility of his accuser's testimony. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). Defendant's counsel extensively cross-examined the complainant concerning her feelings toward the defendant and about the comb incident. We agree with the trial court that the credibility of a witness may not be attacked by extrinsic proof of specific instances of misconduct, Minn.R.Evid. 608(b), and that in view of the tangential relationship between the proffered testimony and the central issue of the case—the truth of the complainant's allegations of sexual abuse—any probative value of the testimony was far outweighed by its prejudicial effect. *State v. Waddell*, 308 N.W.2d 303 (Minn.1981).

A more difficult question is raised by the testimony of Dr. Clare Bell, a clinical psychologist at the Range Mental Health Center in Virginia, Minnesota. Dr. Bell, who had been awarded her Ph.D. degree in psychology in 1979, had a caseload of sixty familial sexual abuse cases at the time of the trial. Dr. Bell related what the complainant had told her about the breakfast time incident and other occasions of sexual abuse, and she testified that the complainant's allegations had remained consistent throughout their several meetings.

In addition, Dr. Bell testified to the uniqueness of incest[2]—that it ordinarily goes on for a long period of time; unlike most crimes, it is unusual for it to occur only on a single occasion. Over defendant's objection Dr. Bell was permitted to describe characteristics or traits typically observed in sexually abused children. Dr. Bell testified that she observed these general characteristics in sexually abused children: fear—the child is afraid to tell of the abuse because she fears she will be blamed or punished, she fears the possible breakup of the family, she fears she won't be believed; confusion, particularly in young children—the child feels this is not right,

---

2. Dr. Bell used the term "incest" to apply to sexual abuse by any person occupying a caring-parenting role with respect to the child victim, whether or not there is any legal or blood relationship between them.

but the adult perpetrator, a person in authority, tells the child it is right; a poor relationship between mother and daughter—the child does not trust the mother, is afraid of what she will do with the information, and does not look to her mother for support.

Dr. Bell also stated that she looked for these more specific individual characteristics: fear of men, nightmares that have an assaultive content, sexual knowledge unusual in a child of the patient's age, and that the child looks and acts older than she is. Dr. Bell then identified those characteristics commonly exhibited by sexually abused children which she had observed in the complainant.

Finally, Dr. Bell explained that it is extremely rare for children to fabricate tales of sexual abuse and stated that in her opinion the complainant knew the difference between the truth and falsehood and was truthful in her allegations.

■ We commence our inquiry into the propriety of admitting Dr. Bell's testimony with the observation that the admission of an expert's opinion generally rests within the discretion of the trial court. A reviewing court will not reverse a trial court's determination unless there is an apparent error. *Hestad v. Pennsylvania Life Insurance Co.*, 295 Minn. 306, 204 N.W.2d 433 (1973). There is no doubt that Dr. Bell is sufficiently qualified to render an opinion with respect to the emotional and psychological characteristics often observed in children who are victims of sexual abuse. In addition to her educational qualifications, Dr. Bell has significant practical experience in dealing with sexually abused children. Thus, the issue to be resolved is whether or not the emotional and psychological characteristics observed in sexually abused children is a proper subject of expert testimony.

■ The basic consideration in admitting expert testimony under Minn.R.Evid. 702 is whether it will assist the jury in resolving the factual questions presented.[3] As we explained in *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980):

If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within that experience, then the testimony does not meet the helpfulness test.

■ In making this determination, the trial court may also consider the concerns expressed in Minn.R.Evid. 403. Even helpful, relevant evidence may be excluded if the trial court concludes that its probative value is substantially outweighed by the danger of unfair prejudice or of misleading the jury. In applying these considerations to Dr. Bell's testimony, we conclude that the admission of that segment of her testimony in which she described the traits and characteristics typically found in sexually abused children and those she had observed in the complainant was not erroneous.

■ There can be no doubt that an indirect effect of that portion of Dr. Bell's testimony was to bolster the complainant's credibility. Much expert testimony tends to show that another witness either is or is not telling the truth. That fact, by itself, does not render the testimony inadmissible. The test is not whether opinion testimony embraces an ultimate issue to be decided by the jury but whether or not the expert's testimony, if believed, will help the jury to understand the evidence or to determine a fact in issue. *Moteberg v. Johnson*, 297 Minn. 28, 210 N.W.2d 27 (1973). With respect to most crimes the credibility of a witness is peculiarly within the competence of the jury, whose common experience affords sufficient basis for the assessment of

3. Minn.R.Evid. 702

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

credibility. In most cases, even though an expert's testimony may arguably provide the jury with potentially useful information, the possibility that the jury may be unduly influenced by an expert's opinion mitigates against admission. Nor should the credibility of witnesses in criminal trials turn on the outcome of a battle among experts. The nature, however, of the sexual abuse of children places lay jurors at a disadvantage. Incest is prohibited in all or almost all cultures, and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse. If the victim of a burglary failed to report the crime promptly, a jury would have good reason to doubt that person's credibility. A young child subjected to sexual abuse, however, may for some time be either unaware or uncertain of the criminality of the abuser's conduct. As Dr. Bell testified, uncertainty becomes confusion when an abuser who fulfills a caring-parenting role in the child's life tells the child that what seems wrong to the child is, in fact, all right. Because of the child's confusion, shame, guilt, and fear, disclosure of the abuse is often long delayed. When the child does complain of sexual abuse, the mother's reaction frequently is disbelief, and she fails to report the allegations to the authorities. By explaining the emotional antecedents of the victim's conduct and the peculiar impact of the crime on other members of the family, an expert can assist the jury in evaluating the credibility of the complainant. *See State v. Middleton,* 294 Or. 427, 657 P.2d 1215 (1983).

In *State v. Saldana,* 324 N.W.2d 227 (Minn.1982), we ruled inadmissible expert testimony regarding rape trauma syndrome because evidence of the typical reactions of a woman who has been raped does not assist the jury in determining whether or not the sexual act was consensual in a particular case and because the testimony furnishes no assistance to jurors, who are as capable as the expert in assessing the credibility of the alleged adult rape victim. In *Saldana,* however, we recognized that when the alleged victim of a sexual assault is a child or mentally retarded person there is presented one of those "unusual cases" in which expert testimony concerning credibility of a witness should be received.[4] In the case of a sexually abused child consent is irrelevant and jurors are often faced with determining the veracity of a young child who tells of a course of conduct carried on over an ill-defined time frame and who appears an uncertain or ambivalent accuser and who may even recant. Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children, and particularly of children as young as this complainant. *State v. Middleton, supra; State v. Kim,* 64 Hawaii 598, 645 P.2d 1330 (1982). *See also State v. Loss,* 295 Minn. 271, 280, 204 N.W.2d 404 (1973) (battered child syndrome); *Ibn-Tamas v. United States,* 407 A.2d 626 (D.C.Cir.1979) (battered wife syndrome).

The second segment of Dr. Bell's testimony consists of her description of characteristics or emotional conditions she observed in the complainant. Myers contends that this part of Dr. Bell's testimony was inadmissible because it was unreliable. He contends that the conditions described by Dr. Bell are highly subjective and not necessarily the result of sexual molestation. That Dr. Bell's observations of the complainant's psychological and emotional condition are not physically demonstrable does not justify the conclusion that they were of no help to the jury. The cause of many physical and emotional ailments and even the existence of those conditions which are identified chiefly by subjective complaints cannot be demonstrated to an absolute certainty; they are, never-

4. *United States v. Barnard,* 490 F.2d 907, 913 (9th Cir.1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974).

theless, the subject of expert testimony. Moreover, the prosecution did not attempt to prove causation through Dr. Bell's testimony but only to demonstrate that the child's emotional condition was not inconsistent with the profile of a sexually abused child. *Cf. State v. Loss*, 295 Minn. 271, 280, 204 N.W.2d 404, 409 (1973). The reliability of expert opinion testimony with regard to the existence or cause of the condition goes not to the admissibility of the testimony but to its relative weight. *State v. Langley*, 354 N.W.2d 389, 401 (Minn.1984). As in other cases, the defendant is free to test the value of the expert's testimony through cross-examination and, when appropriate, presentation of his own expert witnesses. As long as the trial court makes an initial determination that the expert is sufficiently qualified to testify, we ordinarily do not disturb its discretionary evaluation of the probative value of the testimony versus the danger of unfair prejudice.

The final segment of Dr. Bell's testimony consisted of her opinion that complainant's allegations were truthful. The trial court ruled that Myers had waived his right to object to this testimony by "opening the door" in his cross-examination of the complainant's mother. After the complainant's mother had agreed that the complainant was a creative and imaginative child, the following colloquy took place:

Q. In regard to [complainant's] allegation that Jim Myers has committed the three offenses that he's been charged with, namely sexual penetration, sexual contact and attempted sexual penetration, can you say as you sit here today that what she says in that regard is absolutely true?

A. Well, I—I don't see how I can answer that. Are you asking me-Do I believe her?

Q. That's what I'm asking.

A. Yes. Yes, I would believe my daughter, yes.

Q. Did you believe her back in December of 1980?

A. No.

Q. Did you believe her in January of 1981?

A. No.

Q. Did you believe her in February of 1981?

A. No.

Q. Did you believe her in March of 1981?

A. No.

Q. April?

A. No.

Q. May, June?

A. No.

Q. What month and year did you first start to believe her?

A. Well, in a way I always kind of believed her. But I don't know how to answer that one.

It is apparent that the thrust of this portion of the cross-examination was not merely to elicit evidence that the complainant had a reputation for untruthfulness or even that in her mother's opinion the child was not truthful. Rather, the questioning was directed specifically to the mother's disbelief for many months of her child's complaint that the defendant had sexually abused her. Dr. Bell's opinion that the child was truthful in making her allegations was elicited in response.

The admissibility of evidence in the form of opinion pursuant to Minn.R. Evid. 608(a) removes an obstacle to the use of expert testimony concerning the veracity of a witness. 3 D. Louisell & C. Mueller, *Federal Evidence* § 304 (1979). As a general rule, however, we would reject expert opinion testimony regarding the truth or falsity of a witness' allegations about a crime, for the expert's status may lend an unwarranted "stamp of scientific legitimacy" to the allegations. *People v. Izzo*, 90 Mich.App. 727, 730, 282 N.W.2d 10, 11 (1979). Having sought, however, to discredit the child's credibility by showing that the child's mother (the ultimate "expert" with respect to the complainant) did not believe her for several months, the

defendant must be said to have waived objection to responsive opinion testimony even though elicited from an expert of a different kind. *State v. Love,* 350 N.W.2d 359, 362 (Minn.1984). *See also State v. Hesse,* 281 N.W.2d 491, 492 (Minn.1979).

Affirmed.