**STATE of Minnesota, Respondent,**

v.

**Linda Ann FITZGERALD, Appellant.**

**No. C5–85–1132.**

Court of Appeals of Minnesota.

March 4, 1986.

Review Denied April 24, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, John C. Hoffman, Mille Lacs Co. Atty., Walter M. Kaminsky, Asst. Co. Atty., Milaca, for respondent.

C. Paul Jones, State Public Defender, Michael F. Cromett, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and WOZNIAK and SEDG-WICK, JJ.

## OPINION

SEDGWICK, Judge.

Linda Ann Fitzgerald appeals her conviction of second degree criminal sexual conduct (Minn.Stat. § 609.343 (1984)) and aiding first degree criminal sexual conduct (Minn.Stat. § 609.342 (1984)) and the denial of her motion for a new trial. We affirm.

## FACTS

Appellant operated a day care service in her home in Isle, Minnesota, from September 1982 through the fall of 1983. Investigation of this matter began when R.L., one of the children appellant had cared for, gestured toward a poster of a woman and said, "I'm going to dig in her butt." When questioned about the remark, R.L. said he was referring to a game he had learned at appellant's house.

R.L.'s mother discussed the situation with a friend whose daughter, K.D., had also been cared for by appellant. When K.D.'s mother asked what kind of games she had played at appellant's house, K.D. named several games, including "dig in the butt." She described the game as disrobing and scratching the vaginal area.

The charges against appellant involved six children. Only two of the children, T.B. and K.D., were ruled competent to testify at trial. Both children were five years old at the time of the trial.

T.B. testified that she played "digging in the butt game" at Fitzgeralds' home. She said the game was called "dig in the butt" because "they digged in our butts."

T.B. identified marital aids that were seized from appellant's home. She testified that appellant and her husband, Daniel Fitzgerald, stuck these in the children's "butts."

Some of T.B.'s testimony was self-contradictory. In addition, some of her statements reflect an active imagination and appear incredible or fantastic.

K.D. also testified that she played "dig in the butt" at appellant's house. She testified that, probably more than once, she had to suck Daniel Fitzgerald's "peter." K.D. testified that appellant was standing by the corner when Daniel Fitzgerald played the game.

Both children demonstrated the games with anatomically correct dolls. Each identified a gun she said looked like one she had seen at appellant's house. Each also testified that Daniel Fitzgerald threatened her not to tell anyone about playing the games.

The children's mothers provided corroborative testimony. Each recounted what her

daughter had told her about the games. K.D.'s mother described behavioral changes she observed in K.D., including difficulty sleeping, frequent disrobing, and crying when she was taken to appellant's house.

Dr. David Baraga, a psychologist, examined both T.B. and K.D. The children demonstrated for him with anatomically correct dolls how the game was played. Dr. Baraga testified that the children's behavior was very abnormal for their age.

Appellant offered expert testimony regarding pedophilia. The trial court rejected this evidence.

Five counts of criminal sexual conduct were submitted to the jury. Appellant was found guilty of one count of second degree criminal sexual conduct (Minn.Stat. § 609.-343 (1984)) and one count of aiding first degree criminal sexual conduct (Minn.Stat. § 609.342 (1984)). Both counts involved charges related to K.D. The jury returned not guilty verdicts on the remaining three charges.

### ISSUES

1. Was the trial court's finding that two five year old children were competent witnesses an abuse of discretion?

2. Was exclusion of appellant's proffered expert testimony regarding pedophilia an abuse of discretion?

3. Is the evidence sufficient to support the verdict?

4. Was denial of appellant's motion for new trial an abuse of discretion?

### ANALYSIS

■ 1. Competency determinations are within the trial court's discretion. *State v. Cermak*, 350 N.W.2d 328, 332 (Minn.1984). Thus, the trial court's finding will be upheld unless it is a clear abuse of discretion. *Id.* (citations omitted). *See also State v. Carver*, 380 N.W.2d 821 (Minn.Ct.App. 1986).

The statute regarding witness competency begins with the presumption that all witnesses are competent. Minn.Stat. § 595.02, subd. 1 (1984). However, the statute goes on to state:

[C]hildren under ten years of age, if any of them lack capacity to remember or to relate truthfully facts respecting which they are examined, are not competent witnesses.

Minn.Stat. § 595.02, subd. 1(f) (1984).

Thus, competency determinations require a two-part evaluation. The witness must demonstrate 1) an ability to recall facts, and 2) the capacity to tell the truth.

The trial court held competency hearings for both children before trial. There was extensive questioning by the prosecutor and the judge asked questions suggested by defense counsel.

A review of the record of the competency hearings indicates that each child was able to recall and relate facts and each understood the difference between truth and falsity. The trial court's finding that both were competent witnesses was not an abuse of discretion. Once the trial court made this threshold determination, evaluation of the children's credibility was for the jury.

■ 2. Appellant offered expert testimony regarding pedophilia to bolster her credibility. The expert would have testified about typical traits of pedophiles and that abnormalities are apparent in aspects of pedophiles' lives other than their sexuality. The trial court rejected the testimony as irrelevant, as not generally accepted in the psychiatric community, as an indirect presentation of profile or syndrome testimony, and as confusing to the jury.

Expert testimony is admissible if it is helpful to the jury in understanding the evidence or in resolving a factual dispute. Minn.R.Evid. 702. *See also State v. Helterbridle*, 301 N.W.2d 545 (Minn.1980) (exclusion of expert testimony regarding unreliability of eyewitness testimony not an abuse of discretion). The *Helterbridle* court stated:

The basic requirement of Rule 702 is the helpfulness requirement. If the sub-

ject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test. In determining admissibility, of course, the trial court also may rely on those considerations expressed in Minn. R.Evid. 403. Thus, the court may exclude the testimony if the court concludes that it will confuse the jury. Needless to say, the trial court has broad discretion in deciding whether testimony by a qualified expert should be received.

301 N.W.2d at 547 (footnote omitted).

The court here gave several reasons for excluding the proffered testimony, including concern that it would confuse the jury. Exclusion of the testimony was not an abuse of discretion.

Appellant's reliance on *State v. Myers,* 359 N.W.2d 604 (Minn.1984), is misplaced. *Myers* establishes that expert testimony regarding emotional or psychological characteristics of a *child victim* of sexual abuse is admissible. The *Myers* court noted the need for such testimony in child sexual abuse cases. *Id.* at 610. Moreover, *Myers* reaffirms the general rule that admission of expert testimony is within the trial court's discretion. *Id.* at 609. Neither *Myers* nor any other Minnesota case identifies appellant's proffered testimony as a type which the trial court has no discretion to exclude. *See Helterbridle,* 301 N.W.2d at 547. There was no abuse of discretion here.

3. The scope of review on a claim of insufficient evidence is whether the jury, acting with due regard for the presumption of innocence and proof beyond a reasonable doubt, could reasonably have found the defendant guilty. *State v. Norgaard,* 272 Minn. 48, 52, 136 N.W.2d 628, 631–32 (1965). The evidence must be viewed in the light most favorable to the verdict. *State v. Hagen,* 361 N.W.2d 407, 410 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. April 18, 1985). The court should assume that

the jury believed the State's witnesses and either discounted or disbelieved contrary evidence. *See State v. Dodis,* 314 N.W.2d 233 (Minn.1982).

Contrary to appellant's argument, corroboration of a complaining witness's testimony is not necessary in a prosecution under Minn.Stat. §§ 609.342–.346 (1984). Minn.Stat. § 609.347, subd. 1 (1984). Even so, there was corroborative evidence of the children's testimony in this case by the children's mothers and by Dr. Baraga.

■ There is ample testimony in the record to support the convictions. It appears that the jury carefully weighed the evidence and believed K.D. but disbelieved T.B. The jury could reasonably have found appellant guilty of the charges related to K.D.

4. Appellant argues that the prosecutor's conduct deprived her of a fair trial. Specifically, she argues that he, in his opening statement, referred to counts involving children who did not testify at trial; that he repeatedly questioned witnesses about inadmissible matters; and that he attacked the person of appellant's expert witness.

The general standard for determining whether a new trial is warranted due to prosecutorial misconduct was recently stated as follows:

[W]hether "the misconduct, viewed in the light of the whole record, appears to be inexcusable and so serious and prejudicial that defendant's right to a fair trial was denied."

*State v. Booker,* 348 N.W.2d 753, 755 (Minn.1984) (citation omitted).

The Minnesota Supreme Court distinguished two types of prosecutorial misconduct in *State v. Caron,* 300 Minn. 123, 218 N.W.2d 197 (1974).

[T]he more serious the misconduct, the more certain of its effect this court has felt that it should be before labeling the error harmless. Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming.

* * * On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*Id.* at 127–28, 218 N.W.2d at 200.

■ It does not appear that the alleged misconduct in this case played a substantial part in influencing the jury to convict. The jury acquitted on three of the five charges.

The alleged instances of misconduct, even when viewed in the aggregate, did not deprive appellant of a fair trial. The trial court's dismissal of allegations of misconduct was not an abuse of discretion.

Appellant also attacks the jury verdict based upon the comments of a juror. The trial court denied appellant's request for a *Schwartz* hearing because there was no claim of outside influence or extraneous information. *See,* Minn.R.Evid. 606(b); *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 104 N.W.2d 301 (1960).

■ Appellant did not demonstrate grounds for a *Schwartz* hearing. The jury was polled and all agreed with the verdict. The fact that a juror has had second thoughts about a verdict does not necessitate a new trial.

Grant of a new trial is within the trial court's discretion and an order denying a new trial will not be reversed except for an abuse of discretion. *State v. Hagen,* 361 N.W.2d 407, 412 (Minn.Ct.App.1985) *pet. for rev. denied* (Minn. April 18, 1985) (citing *Martin v. State,* 295 N.W.2d 76 (Minn. 1980)). There was no abuse of discretion here.

**DECISION**

The trial court did not abuse its discretion in finding the child witnesses competent, in excluding appellant's proffered expert testimony, or in denying a new trial. The evidence is sufficient to support the verdict.

We affirm.