**STATE of Minnesota, Respondent,**

v.

**Paul Richard HAKALA, Appellant.**

No. A08–0215.

Court of Appeals of Minnesota.

March 31, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Lawrence F. Clark, Assistant County Attorney, Hastings, MN, for respondent.

Joseph Dudley, Jr., John C. Lillie, III, Mark K. Thompson, Dudley & Smith, St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; CONNOLLY, Judge; and PORITSKY, Judge.*

## O P I N I O N

HUDSON, Judge.

On appeal from his convictions of one count of criminal sexual conduct in the first degree and two counts of criminal sexual conduct in the second degree, appellant argues that (1) Minn.Stat. §§ 609.342, subd. 3, .343, subd. 3 (2006), as applied to him, violate his constitutional right to be free from self-incrimination, and (2) the district court abused its discre-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

tion when it excluded the testimony of his expert witness. We reverse and remand.

## FACTS

On January 11, 2007, a complaint was filed in Dakota County alleging that Paul Richard Hakala (appellant) sexually abused his three granddaughters. Appellant was charged with one count of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1(g) (2006), and two counts of criminal sexual conduct in the second degree in violation of Minn.Stat. § 609.343, subd. 1(g) (2006). A jury trial commenced on July 30, 2007. Prior to trial, the victims were interviewed by a child protection social worker at CornerHouse (an inter-agency child-abuse evaluation and training center). At trial, the state (respondent) called the social worker to testify. The social worker testified about her training for interviewing children who have allegedly been sexually abused, as well as the proper protocol for interviewing such children. She concluded by discussing her interviews with the alleged victims here. In addition to live testimony by the victims, the taped interviews between the social worker and the victims were also played for the jury.

Near the end of trial, appellant attempted to call an expert witness, Dr. Susan Phipps–Yonas, to testify about the interview techniques employed by the social worker. The state moved to exclude or, alternatively, to limit appellant's expert witness's testimony. In response to the state's motion, appellant's counsel stated that he was not offering the testimony to impeach the victims' credibility, but rather, to shed light on "[i]nterviewing techniques, safeguards, normal things you put in place when interviewing children, normal procedures and processes, based on her training and experience." After reviewing perti-

nent caselaw and Minn. R. Evid. 702, the district court granted the state's motion to exclude appellant's expert testimony. The district court reasoned

> that the testimony by Dr. Phipps–Yonas to attack the credibility of the reporter, the interviewer, is such that by attacking the interviewing techniques used by the interviewer, appellant's expert would, in effect, have implicitly asserted that the children were not telling the truth. And credibility determinations are ordinarily within the province of the jury or finder of fact.... [T]he defendant was allowed to explore the interviewing techniques that were used and may still argue to the jury that those interview techniques may have influenced the answers that the girls gave.

The district court also took into consideration the balancing required under Minn. R. Evid. 403 and ruled

> that although relevant, the evidence is excluded because its probative value is substantially—and I underline "substantially"—outweighed by the danger of unfair prejudice. The questioning by attacking the interviewing techniques used by the interviewer, the defendant's expert would have and will have implicitly asserted that the children are not telling the truth.

Appellant was found guilty of all three counts of criminal sexual conduct. The presentence investigation report (PSI) included findings from a psychosexual evaluation of appellant. The evaluator of appellant found that appellant was not amenable to sex-offender treatment because he continued to deny the offenses, he had no remorse or empathy, and he was in the process of an appeal. The probation officer who drafted the PSI echoed these findings and stated that appellant "is not currently amenable to sex offender specific treatment. He continues to adamantly

deny the instant offense and accuses the victims of making up the allegations." In accordance with the sentencing guidelines, the district court sentenced appellant to 144 months for count one, 33 months for count two (to run concurrent), and 21 months for count three (to run consecutive). The district court declined to stay execution of the sentence because a stay was (a) not in the best interests of the complainants or family and (b) appellant had not been accepted to and could not respond to a treatment program. This appeal follows.

### ISSUES

I. Are Minn.Stat. §§ 609.342, subd. 3, .343, subd. 3, unconstitutional as applied to appellant?

II. Did the district court abuse its discretion when it excluded appellant's expert witness testimony?

### ANALYSIS

**I. Are Minn.Stat. §§ 609.342, subd. 3, .343, subd. 3, unconstitutional as applied to appellant?**

Appellant argues that both Minn. Stat. §§ 609.342, subd. 3, .343, subd. 3, violate his constitutional right to be free from self-incrimination because they compel him to testify against himself and present a risk of future incrimination. "We review questions of statutory construction de novo." *Houston v. Int'l Data Transfer Corp.*, 645 N.W.2d 144, 149 (Minn.2002).

The federal and Minnesota constitutions provide that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; Minn. Const. art. I, § 7. The right against compelled self-incrimination allows an accused to refuse to answer any official question, so long as "there is some rational basis for believing that it will in-

criminate him, at least without *at that time* being assured that neither it nor its fruits may be used against him." *Minnesota v. Murphy*, 465 U.S. 420, 429, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984) (quotation omitted). Under the challenged Minnesota statutes, a district court is permitted to stay the execution of the sentence if it finds that: "(a) a stay is in the best interest of the complainant or the family unit; and (b) a professional assessment indicates that the offender has been accepted by and can respond to a treatment program." Minn.Stat. §§ 609.342, subd. 3, .343, subd. 3.

Appellant argues that he was effectively denied the opportunity to be considered for a stayed sentence because the probation officer determined that appellant was unamenable to a treatment program; and the only reason he was unamenable to treatment was because he denied the allegations against him, showed no remorse, and was in the process of pursuing an appeal. Stated differently, appellant argues that the statute violates his right against self-incrimination because, in order to be accepted by a treatment program, he must first be considered "amenable to treatment," which requires him to admit his guilt, incriminate himself, and show remorse for his crimes.

But in order to stay the execution of appellant's sentence, the district court was required to find two factors: (1) that appellant is amenable to treatment *and* (2) that a stay of imposition is in the best interests of the complainant or the family unit. Here, the district court explicitly found that a stay of imposition was not in the best interests of the complainants or the family unit, in part because it was doubtful that the parents would reconcile with appellant. This finding does not depend on a failure to admit the offenses. For that reason, we do not reach the issue

of whether the challenged statutes violate appellants right against self-incrimination under the federal and Minnesota constitutions.

## II. Did the district court abuse its discretion when it excluded appellant's expert witness testimony?

■ Appellant argues that the district court abused its discretion when it excluded the testimony of his expert witness, Dr. Phipps–Yonas. We agree and conclude that appellant is entitled to a new trial.

■ "The admission of expert testimony is within the broad discretion accorded a [district] court, and rulings ... may be reversed only if the [district] court clearly abused its discretion." *State v. Ritt,* 599 N.W.2d 802, 810 (Minn.1999) (citations omitted); *see also State v. Grecinger,* 569 N.W.2d 189, 194 (Minn.1997) (stating that reversal requires "apparent error"). And any error in excluding such testimony is subject to the harmless-error analysis. *State v. Quick,* 659 N.W.2d 701, 713 (Minn.2003). In applying the harmless-error test, we "must look to the basis on which the jury rested its verdict and determine what effect the error had on the actual verdict. If the verdict actually rendered was surely unattributable to the error, the error is harmless beyond a reasonable doubt." *State v. Juarez,* 572 N.W.2d 286, 292 (Minn.1997) (quotation omitted). In other words, if the evidence had been admitted, we must be satisfied beyond a reasonable doubt that a jury would have reached the same verdict. *State v. Post,* 512 N.W.2d 99, 102 (Minn. 1994). If "there is a reasonable possibility that the verdict might have been different if the evidence had been admitted, then the erroneous exclusion of the evidence is" not harmless error. *Id.*

■ Admissibility of expert testimony is governed by Minn. R. Evid. 702:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The basic consideration used to determine whether expert testimony should be admitted is whether the testimony will be helpful to the jury. *State v. Helterbridle,* 301 N.W.2d 545, 547 (Minn.1980). The helpfulness requirement is not met "[i]f the subject of the testimony is within the knowledge and experience of a lay jury *and* the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions." *Id.* (emphasis added). Even when the helpfulness requirement is met, the district court may exclude the testimony based on Minn. R. Evid. 403. *Id.* If the probative value of the testimony is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury, the testimony may be excluded. *State v. Hall,* 406 N.W.2d 503, 505 (Minn. 1987).

With respect to most crimes the credibility of a witness is peculiarly within the competence of the jury, whose common experience affords sufficient basis for the assessment of credibility. In most cases, even though an expert's testimony may arguably provide the jury with potentially useful information, the possibility that the jury may be unduly influenced by an expert's opinion mitigates against admission. Nor should the credibility of witnesses in criminal trials turn on the outcome of a battle among experts.

*State v. Myers,* 359 N.W.2d 604, 609–10 (Minn.1984).

In *Myers,* the defendant called the child-complainant's credibility into question by cross-examining the child's mother as to the child's truthfulness, thereby "opening the door" to the expert's opinion testimony as to the child's truthfulness. *Id.* at 611. The expert's opinion testimony was allowed because "[h]aving sought ... to discredit the child's credibility by showing that the child's mother (the ultimate 'expert' with respect to the complainant) did not believe [the child] for several months, the defendant must be said to have waived objection to responsive opinion testimony." *Id.* at 611–12. The supreme court held that the expert could offer an opinion that the minor complainant's allegations about sexual abuse were not fabricated, in addition to testifying about the behavior and symptoms typically exhibited by sexually abused children. *Id.* at 606. The supreme court stated that an indirect effect of that testimony was to bolster the complainant's credibility. *Id.* at 609. The supreme court reasoned that the common experience of a jury would not represent an adequate foundation for assessing the credibility of a child who complains of sexual abuse, and it ruled that the expert testimony was admissible. *Id.* at 610. "When the alleged victim of a sexual assault is a child or mentally retarded person there is presented one of those 'unusual cases' in which expert testimony concerning credibility of a witness should be received." *Id.* (citing *State v. Saldana,* 324 N.W.2d 227, 231 (Minn.1982)).

In some respects, appellant's case is factually dissimilar to *Myers.* The victim in *Myers* was a young child; here, the victims were preteens at the time of the alleged abuse. The expert testimony in *Myers* bolstered the victim's credibility; here, the expert testimony would have likely undermined the victims' credibility. We do not, however, deem these distinctions dispositive. Of more importance to

our analysis is the fact that *Myers* specifically held that cases involving the alleged sexual assault of a child present "one of those 'unusual cases' in which expert testimony concerning credibility of a witness should be received." *Id.* The facts of this case highlight the wisdom of the holding in *Myers* and demonstrate why the admission of expert testimony cannot rise or fall solely, or even primarily, on whether that testimony will impact the witness's credibility.

Here, appellant's expert witness viewed the videotaped interviews conducted by the social worker. Appellant offered to limit the scope of the expert's testimony to the validity of the protocol and interview techniques used during the interview and indicated that the expert witness would not directly address the victims' credibility. Specifically, appellant assured the district court that the expert witness testimony would be confined to "how the interview process was taken and conducted, ... opinions as to what safeguards generally should be put in place when interviewing children, and what the dangers are if certain safeguards aren't put in place." Notably, the state appeared amenable to this limited testimony, as evidenced by its motion to exclude *or* limit the expert's testimony.

Despite these assurances, the district court excluded the testimony of appellant's expert witness, ruling that its probative value was substantially outweighed by the danger of unfair prejudice. The district court further reasoned that by attacking the interview techniques used by the social worker, appellant's expert would have implicitly asserted that the children were not telling the truth.

But *Myers* addressed this concern and held that, "[m]uch expert testimony tends to show that another witness either is or is

not telling the truth. That fact, by itself, does not render the testimony inadmissible." *Id.* at 609. And here, the case for admissibility was particularly strong given that both parties had agreed to limit the expert's testimony to interview protocols and techniques, thus lessening any impact on the victims' credibility.

Moreover, under *Helterbridle* and *Myers*, the basic consideration used to determine whether expert testimony should be admitted is whether the testimony will be helpful to the jury. In *Myers*, the court found the expert testimony admissible because the topic met the helpfulness requirement, i.e., the characteristics of sexually abused children are outside the scope of an average jury's knowledge and, therefore, such information is helpful in deciding the case. *Myers*, 359 N.W.2d at 610. Similarly, here, expert testimony concerning the techniques of interviewing sexually abused children is a separate but integrally related component of evaluating the emotional and psychological characteristics of sexually abused children—a topic that is generally not within the knowledge and experience of a lay jury. *Id.*; *State v. Morales–Mulato,* 744 N.W.2d 679, 689 (Minn.App.2008) (acknowledging that protocol for interviewing child reporters of sexual abuse "may not be within the experience of jurors or discernable from the interview itself"), *review denied* (Minn. Apr. 29, 2008). Thus, appellant's proffered expert testimony met the helpfulness requirement in that it would have further explained proper interview techniques of sexual-abuse victims, thereby (1) aiding the jury in understanding the evidence presented at trial and (2) potentially adding depth and precision to the jury's credibility determinations.

The state counters that, had the expert testimony been admitted, the trial would have devolved into a "battle among experts," a situation *Myers* cautioned against. 359 N.W.2d at 610. But *Myers* expressed that caution principally as it related to credibility determinations outside of the child-sexual-abuse context, where the common experience of lay jurors lessens the need for expert testimony and the concomitant risk that the expert opinion will unduly influence the jury. *Id.* Moreover, here, any "battle among experts" would have been limited to their respective opinions about interview protocol—not the credibility of the victims. Accordingly, we conclude that the district court abused its discretion by refusing to allow appellant's expert witness to testify. But that does not conclude our analysis as we must still determine whether the error in excluding appellant's expert testimony was harmless.

After careful consideration, we conclude that the error was not harmless. Our chief concern is that the legal playing field was not level, primarily because the state was permitted to introduce the testimony of the social worker who interviewed the victims and discussed the standard interviewing protocol. The end result was that the state clearly implied that the victims' statements were obtained by an expert and in a manner designed to elicit accurate and truthful information from a child. In sum, the social worker's testimony implicitly, if not directly, bolstered the credibility of the victims who, we note, not only testified, but had their taped interviews played for the jury, as well. In the absence of contrary testimony from appellant's expert witness regarding the propriety of the interviewer's technique, in our view, appellant was denied an opportunity to fully present his defense and, ultimately, the right to a fair trial. And while the state argues that the social worker was not introduced as an expert witness, our review of the record convinces us that the social worker was a de facto expert wit-

ness, regardless of the label she wore. This is borne out by the state's exhaustive review of the social worker's educational credentials and training, including that she had a master's degree and was considered a child-welfare scholar. In sum, we are not satisfied beyond a reasonable doubt that a jury would have reached the same verdict if appellant's expert testimony had been admitted.

We respect the broad discretion given the district courts on the admissibility of expert testimony under Minn. R. Evid. 702, but on this record, and in accord with *Myers,* we conclude that the probative value of appellant's expert witness's testimony outweighed any prejudicial effect under Minn. R. Evid. 403, and we hold that the district court abused its discretion in refusing to allow appellant's expert witness to testify. Accordingly, appellant is entitled to a new trial.

## DECISION

The district court abused its discretion when it excluded the expert witness testimony offered by appellant.

**Reversed and remanded.**

CONNOLLY, Judge (concurring in part and dissenting in part).

I concur in part I of the decision. However, I respectfully dissent from part II. I would affirm the district court's decision to exclude the testimony of appellant's expert witness. Our standard of review mandates deference to the district court's decision where the evidence in the record shows the district court carefully considered the issue and did not make an error of law.

District courts have broad discretion in deciding whether testimony of qualified experts should be received, and this determination will be reversed only for a clear abuse of that discretion. *State v. Helterbridle,* 301 N.W.2d 545, 547 (Minn.1980).

Here the district court, after reviewing relevant supreme court precedent, concluded that permitting the testimony of Dr. Phipps–Yonas would have turned the determination of the credibility of the children into a battle of the experts. *See State v. Ritt,* 599 N.W.2d 802, 812 (Minn. 1999) ("[The supreme court] has been very reluctant to allow experts to testify about matters that are generally for the jury's determination and are susceptible to cross-examination."). Moreover, the district court did. permit the appellant to cross-examine the child-protection worker who interviewed the children about the questions and procedure she used during the interview.

Even if the district court abused its discretion by excluding the testimony of the expert witness, any such error was harmless beyond a reasonable doubt. *See State v. Post,* 512 N.W.2d 99, 102 (Minn. 1994) (holding that "the reviewing court must be satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, an average jury (i.e., a reasonable jury) would have reached the same verdict" (citation omitted)). The evidence of appellant's guilt was based on the live testimony of three different victims varying between the ages of 13 to 17. All three victims provided consistent testimony, which the jury believed.

Because the district court did not abuse its discretion in excluding the testimony of appellant's expert witness, and even if it did, any resulting error was harmless, the convictions should be affirmed.