*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1884**

Ricardo Amigon-Vidal, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 17, 2017
Affirmed
Jesson, Judge**

Hennepin County District Court
File No. 27-CR-15-14358

Carrie Peltier, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Sarah Becker, Jennifer Saunders, Assistant City Attorneys, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

Appellant Ricardo Amigon-Vidal challenges his conviction of indecent exposure, arguing that the district court committed reversible error when it allowed the state to elicit an in-court identification after an impermissibly suggestive identification procedure.

Because any error was harmless and did not affect Amigon-Vidal's substantial rights, we affirm.

## FACTS

At approximately 8:15 a.m. on May 13, 2015, three minor girls waited at their school bus stop in south Minneapolis. A man, later identified as appellant Ricardo Amigon-Vidal, drove by the bus stop while exposing himself and masturbating. The girls wrote down his license plate number and reported the incident to the police.[1] The man's car was black or gray, rode low to the ground, and had rust on it. One of the girls described the man as a Hispanic man with facial stubble. Another described him as having black hair and tan skin. On the morning of May 27, Amigon-Vidal was arrested in the same neighborhood because he matched the girls' description and was driving the same car.

Amigon-Vidal was charged with one count of indecent exposure. *See* Minn. Stat. § 617.23, subd. 2(1) (2014). Before trial, Amigon-Vidal moved to preclude any witness from making an in-court identification, arguing that such an identification would be a product of an impermissibly suggestive procedure. The district court denied his motion until the identification arose at trial. At trial, three witnesses testified to establish the identity of Amigon-Vidal: two of the girls who witnessed the offense, E.C. and H.J., and the investigating police officer.

E.C. testified that she was waiting at her bus stop with her schoolmate on May 13. She described the car as black or gray, with paint peeling off, rusty, and riding lower to the

---

[1] Amigon-Vidal does not challenge that he is the rightful owner of the car.

ground. She saw that the man steered the car with his left hand while using his right hand to masturbate. E.C. explained that she was able to see inside the car because it was low to the ground, one foot away from the curb, and his passenger-side window was partly rolled down. While she did not see the man's whole face, she saw that he had stubble on the bottom of his face, he was wearing a hat, and he was facing forward. Her schoolmate repeated the license plate number, and E.C. wrote it down in her cell phone. E.C. also testified that she had seen the same man's face one month earlier, but he was driving a different car. To refresh E.C.'s memory, the state then played a video recording taken from a police car, which showed Amigon-Vidal sitting in the back of the squad car the day of his arrest.[2] After seeing the video and a still image from it, E.C. identified Amigon-Vidal as the man who exposed himself. Amigon-Vidal did not object to the in-court identification during her testimony. On cross-examination, E.C. agreed that seeing the picture made it was easier for her to identify Amigon-Vidal.

E.C.'s schoolmate, H.J., then took the stand. She testified that on May 13 she saw Amigon-Vidal's car for ten to fifteen seconds before running toward the girls at the bus stop, though she did not see the face of the man driving the car. At this time, the district court judge, of his own accord, ordered a brief recess. Outside the presence of the jury, the district court judge revealed his concern with E.C.'s identification because E.C. was presented with a single photograph of Amigon-Vidal immediately before identifying him

---

[2] The district court ruled that only the still images from the video should be offered to the jury.

3

in court. The district court judge offered to provide a cautionary instruction to the jury about E.C.'s identification. Amigon-Vidal agreed.

H.J. then testified that she also saw the same car one month before May 13. She explained that she was waiting for E.C. at the bus stop in April when the same car drove by. She testified that the car was small and dark in color. She described the man as having dark hair and tan skin. She was approximately ten feet away and saw inside the car. The man was masturbating with his right hand and driving with his left hand. In the courtroom, H.J. identified Amigon-Vidal as the man who was driving in April. She was 65% sure of her identification.

Following H.J.'s testimony, Amigon-Vidal moved for a mistrial based on E.C.'s in-court identification. The district court denied Amigon-Vidal's motion, noting that it would have sustained an objection to the identification if the defense had made a timely objection.

Finally, Sergeant Julie Hagen testified regarding her investigation. She explained that, on the morning of May 27, she drove through the same area as the bus stop. She identified a car that matched the description and license plate of the car that the girls reported. The car was stopped, and Amigon-Vidal was arrested after Hagen determined that he also matched the girls' description of the offender. Hagen explained that she did not conduct line-up identification because both Amigon-Vidal and his car matched the girls' descriptions, and because he was found in the same area at the same time as the previous incident.

Amigon-Vidal did not testify. At the end of trial, the district court instructed the jurors to assess whether E.C.'s identification was a product of seeing the photograph rather

4

than her own memory of what she saw on May 13. Amigon-Vidal was found guilty and sentenced to 365 days in jail. The district court later denied Amigon-Vidal's postconviction motion for a judgment of acquittal or a new trial, determining that even if it was plain error to allow the in-court identification, it was harmless. This appeal follows.

## DECISION

Amigon-Vidal argues that E.C.'s in-court identification violated his due-process rights because it was the product of an impermissibly suggestive identification procedure.[3] While he concedes that he failed to make a timely objection at the time of E.C.'s identification, Amigon-Vidal maintains that admission of the identification was error. Assuming without deciding that admission of the identification was error, we conclude that it did not affect Amigon-Vidal's substantial rights.

When a defendant fails to object to an error at trial, our review is under the plain-error standard. Minn. R. Crim. P. 31.02; *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Under this standard, the defendant must show: (1) error; (2) that was plain; and (3) that affected substantial rights. *Griller*, 583 N.W.2d at 740 (citing *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1548-49 (1997)). Assuming that the first two prongs are met, the party claiming error "bears the heavy burden of showing that there is a reasonable likelihood the error had a significant effect on the verdict" in order to satisfy the third prong. *State v. Davis*, 820 N.W.2d 525, 535 (Minn. 2012). If all three prongs are

---

[3] At oral argument, Amigon-Vidal waived his arguments that he received ineffective assistance of trial counsel and that the district court abused its discretion in denying his motion for a mistrial. We note that the district court also denied his postconviction petition, which alleged ineffective assistance of trial counsel.

5

satisfied, the court must then analyze whether it should address the error to ensure fairness and integrity in judicial proceedings. *Griller*, 583 N.W.2d at 740.

Assuming without deciding that the district court erred by permitting the in-court identification, we address the third prong of the plain-error analysis: is there a reasonable likelihood that the error had a significant effect on the verdict? Because there was considerable other evidence of Amigon-Vidal's identity, the district court gave a cautionary instruction, and the concerns of an impermissibly suggestive identification procedure are not present, we conclude that the error was harmless.

There was ample evidence of Amigon-Vidal's identity outside of E.C.'s in-court identification. E.C. wrote down the license plate of the car immediately after the incident. While she did not personally see the license plate, her schoolmate, who did see the license plate, repeated the number to her over and over again. And Amigon-Vidal does not challenge that he is the owner of the car.

Together with the license plate number that was reported to the police, E.C. and H.J. also testified to the description of the car. E.C. testified the car as black or gray with rust, riding low to the ground. She saw the car for ten to fifteen seconds. H.J. had the opportunity to see the car on two occasions. On May 13th, she saw the car stop for ten to fifteen seconds. H.J. further testified that she saw the same car while waiting at the bus stop in April 2015.

In addition to the license plate number and the descriptions of the car, H.J. identified Amigon-Vidal in court as the man who she saw in April 2015, driving the same car she saw on May 13. H.J. was not shown a picture of Amigon-Vidal before her identification.

6

Further, the girls' initial descriptions to the police of the man they saw at the bus stop provide evidence of Amigon-Vidal's identity.

This collective evidence of identity outside of E.C.'s in-court identification was buttressed by the location of Amigon-Vidal at the time of arrest. Hagen testified that two weeks after the report to the police, while driving in the same vicinity of the bus stop, she saw a car that matched the girls' description. The car had the same license plate. She saw Amigon-Vidal, who matched the description the girls had given. Hagen's testimony establishes that he was found in the same car, at the same time of day, and in the same vicinity of the bus stop at the time of his arrest. In summary, given the license plate number, the descriptions of the car, H.J.'s in-court identification, the earlier descriptions of the man, and his arrest in the same vicinity, the evidence of Amigon-Vidal's identity is abundant.

Moreover, the district court gave a cautionary instruction to the jury regarding E.C.'s identification. Minnesota courts presume that jurors follow instructions. *State v. Budreau*, 641 N.W.2d 919, 926 (Minn. 2002). The instructions informed the jury to carefully evaluate E.C.'s testimony and consider certain factors such as her opportunity to see the man. The jurors were instructed to assess for themselves whether E.C.'s identification was a product of seeing a photograph of Amigon-Vidal rather than her own memory.

Finally, the concerns of an impermissibly suggestive identification procedure are not present here. If a witness has only obtained a brief glimpse of a criminal, with a single-photograph identification, a witness may make an incorrect identification. *State v. Watts*,

7

296 Minn. 354, 359, 208 N.W.2d 748, 751 (1973). The witness may be inclined to retain the memory of the photograph, rather than the actual person, after a suggestive identification. *Id.* But where an identification occurs in the courtroom, rather than in a pre-trial line-up or show-up, the jury can view the identification procedure firsthand and assess the witness's credibility for themselves. A defendant can also cross-examine the witness to test the veracity and reliability of the identification. *See State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn. 1980) (explaining in dicta that effective cross-examination, persuasive argument by defense counsel, proper jury instructions, and the requirement of jury unanimity are additional safeguards to ensure the reliability of eyewitness identification without the need to admit expert testimony regarding the reliability of the identification). Here, Amigon-Vidal, on cross-examination, questioned E.C.'s identification: "[Y]ou said you saw the picture [of Amigon-Vidal] and then you recognized him, right?" Amigon-Vidal's counsel also emphasized that E.C. did not see much of the man's face.

Assuming that the in-court identification procedure was error, we conclude that any error did not affect Amigon-Vidal's substantial rights because the state presented ample other evidence of his identity, and the district court's cautionary instruction ensured that the identification did not improperly persuade the jury.[4]

**Affirmed.**

---

[4] Because Amigon-Vidal has not demonstrated that the three prongs of the plain-error analysis are satisfied, we do not analyze whether we should address the error to ensure fairness and integrity in judicial proceedings. *See Griller*, 583 N.W.2d at 740.

8