553 So.2d 1138 (1989)
Ex parte Arvel James HILL.
(Re Arvel James Hill
v.
State).
88-684.
Supreme Court of Alabama.
September 15, 1989.
Rehearing Denied November 9, 1989.
Gary L. Blume, Tuscaloosa, for petitioner.
Don Siegelman, Atty. Gen., and Robin Blevins, Asst. Atty. Gen., for respondent.
SHORES, Justice.
James Arvel Hill was found guilty by a jury in Tuscaloosa County of one count of rape in the first degree and two counts of sexual abuse in the second degree. On appeal, the Court of Criminal Appeals affirmed, without opinion. 541 So.2d 83. We granted certiorari to consider whether it is proper to allow expert testimony from social workers with respect to the credibility of sexually abused victims. We hold that it is, and we affirm.
The facts of the case show that one of the alleged victims had recanted before the trial, and a tape of her recorded story was introduced at trial, but she also changed back and told her original story. In addition, the trial court allowed social workers Sharon Whitfield and Virginia Glicken to be qualified as expert witnesses on this issue over the objection of defense counsel. Whitfield was allowed to testify that it was not unusual for an adolescent to recant a complaint alleging sexual abuse. Glicken, who had never met the parties involved, testified that teenagers and children in general do not fabricate episodes of sexual abuse and that delay in reporting is normal.
The defendant contends that Whitfield and Glicken were not competent to testify as to the issue. "The question of the competency of a particular witness to testify as an expert is addressed primarily to the trial court. In the absence of abuse of discretion vested in the trial court, we cannot supplant its judgment by our own, even if it were otherwise." Allen v. State, 472 So.2d 1122, 1126 (Ala.Cr.App.1985) (citations omitted). We have examined the record, and we conclude that the trial judge properly ruled that the social workers were qualified to testify as experts on this sexual abuse issue.
The defendant timely and properly objected to the "experts'" testimony. The *1139 defendant asserts that it was prejudicial to allow the social workers to give testimony on "recantation" because, he argues, such testimony was not outside the knowledge of the average lay person and this could have been viewed by the jury as vouching for the credibility of the prosecutrix, and thus invaded the province of the jury.
In order for expert testimony to be helpful to the trier of fact and thereby be admissible, the subject matter must be beyond the ken of the average juror. Thompson v. Jarrell, 460 So.2d 148, 151 (Ala.1984) (citations omitted). Thus, where expert testimony will enable the lay juror to appropriately draw conclusions from evidence that it is beyond his or her normal experience, that testimony is admissible.
The defendant relies on the case of Commonwealth v. Seese, 512 Pa. 439, 517 A.2d 920 (1986), wherein the court said:
"For example, if testimony as to the veracity of various classes of people on particular subjects were to be permitted as evidence, one could imagine an `expert' testifying as to the veracity of the elderly, various ethnic groups, members of different religious faiths, persons employed in various trades and professions, etc. Such testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the particular witness who testified at trial, allowing them instead to defer to the so-called `expert' assessment of the truthfulness of the class of people of which the particular witness is a member. In addition, such testimony would imbue the opinions of `experts' with an unwarranted appearance of reliability upon a subject, veracity, which is not beyond the facility of the ordinary juror to assess."
512 Pa. at 444, 517 A.2d at 922.
The defendant argues that the subject matter of "recantation" is not beyond the ken of the average lay person. He contends that the use of experts bolstered the credibility of the prosecutrix so as to invade the province of the jury. We disagree.
In Allen v. State, 472 So.2d 1122 (Ala. Crim.App.1985), the Court of Criminal Appeals addressed the question of whether a witness with experience in dealing with young sexual abuse victims should have been allowed to testify that it was not unusual for a child to wait a long period of time before telling others about the abuse incident. That witness's testimony was similar to testimony in the present case. The court found no error.
Authority for this position can be found in other jurisdictions. In State v. Myers, 359 N.W.2d 604 (Minn.1984), the Minnesota Supreme Court held that, under facts similar to those at issue here, the emotional and psychological characteristics observed in sexually abused children were a proper subject of expert testimony. Id., at 609. While admitting that the indirect effect of the expert's testimony was to bolster the credibility of the victim, the court said that that indirect effect did not render the testimony inadmissible. The Myers court went on to say that "the test is not whether opinion testimony embraces an ultimate issue to be decided by the jury, but whether or not the expert's testimony, if believed, will help the jury to understand the evidence or determine a fact in issue." Id. at 609. The Minnesota Supreme Court pointed out that the credibility of witnesses in a criminal trial should not turn upon the outcome of a battle of experts.
The Minnesota court found that "the sexual abuse of children places lay jurors at a disadvantage." Id., at 610. We agree. The confusion and feelings of shame and guilt associated with sexual abuse of children are beyond the ken of the average juror. Therefore, expert testimony should be allowed to explain the emotional effects of sexual abuse upon an adolescent, so that the triers of fact may appropriately draw conclusions from the testimony.
For the reasons stated above, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
JONES, J., dissents.
*1140 JONES, Justice (dissenting).
I do not understand whether the majority opinion, approving the admission of this so-called "expert" testimony, is based upon the general rules of evidence (specifically, the rule that the issue of admissibility lies within the trial court's discretion), or is based upon an exception to the general rule created because of the youthful age of the prosecuting witness. I have consistently voted in favor of recognizing variations from the general rule where some degree of accommodation is required in deference to the right of the child to testify in his or her own behalf. E.g., Ex parte Strickland, 550 So.2d 1054 (Ala.1989). Exceptions to the general rules of evidence are necessary in certain types of cases where otherwise crucial evidence would be unavailable. Nonetheless, before it is permitted, every such exception should be carefully examined and weighed in light of its necessity to effect the ends of justice.
Although the majority refers to Allen v. State, 472 So.2d 1122 (Ala.Cr.App.1985), as support for the proposition that the admissibility of the "expert" evidence in this case was within the trial court's discretion, I doubt that the majority means that this is the basis for its holding. While the threshold question whether these witnesses were qualified to testify as experts lies within the trial court's discretion, the substance of their testimony is admissible or not depending on objective and definitive rules of evidence. To be sure, even the Minnesota case of State v. Myers, 359 N.W.2d 604 (Minn.1964), cited by the majority, makes it clear that the evidence is admissible as an exception to the general rules of evidence.
At any rate, under either test, the substance of these two "expert" opinions should not have been allowed in this case. There is a material flaw in the predicate laid for the "expert" opinions. Both witnesses were allowed to tell the jury, in effect, that because each of them had worked on a certain number of cases in which young children had first complained of sexual abuse and subsequently had recanted their stories, the child's recantation in this case was therefore unreliable. If no correlation between particular characteristics and established cases of sexual abuse is shown through other scientific or professional studies, such testimony amounts to "testimonial generalities." See State v. Maule, 35 Wash.App. 287, 667 P.2d 96 (1983). The literature in this field, reporting numerous case studies (some of which are cited in the appellant's brief), demonstrate that just less than one-half of the recantations studied were themselves true. Statistics indicate that the frequency of false reports of sex offenses approximates the frequency of false reports of other crimes. Lloyd, "The Corroboration of Sexual Victimization of Children," ABA National Legal Resource Center for Child Advocacy and Protection, Child Sexual Abuse and the Law, 1 (J. Bulkley ed. 1981), at 103-04.[1] These factors were totally lacking in the predicate established by these witnesses.
To the contrary, the jury was asked to assess this prosecutrix's recantation solely on the basis of limited case studies that assumed all of the studied recantations were false. Moreover, neither witness attested to any generally accepted empirical studies of recantations based on a scientifically approved method of social research. Other jurisdictions, and more particularly Washington State, have expressed concern over this very point. See, e.g., State v. Madison, 53 Wash.App. 754, 770 P.2d 662 (1989) (noting that the expert "relied on some personal experiences, but did not detail how she determined when recantations occurred in cases where the original *1141 claim was independently verified," and that "[h]er general statements such as `review of the literature' and `major writers in the field' are hardly adequate when there is no prior ... authority for admission of [such] expert testimony").
As previously stated, I have consistently voted in favor of recognizing exceptions to the general rules of evidence when exceptions have been necessary; however, there must be some guidelines established by which a predicate or foundation is to be laid for the admission of expert testimony regarding the subject involved in this case. Sound established principles of evidence are the foundation upon which the concept of a fair trial is based. To admit such generalized and unsubstantiated expert opinion testimony flies in the face of this concept.
This case illustrates the danger of moving away from established and time-tested principles too fast and too impulsively, all because of a perceived need to remedy an immediate problem. Absent expert testimony founded upon empirical studies widely accepted in the field of social science, the good common sense of 12 jurors is all that was needed here to judge the credibility of this prosecutrix.
NOTES
[1] For other current literature in this field, see Summit, The Child Sexual Abuse Accommodation Syndrome, 7 Int'l J. of Child Abuse and Neglect 177 (1988); Jones & McGraw, Reliable and Fiction Accounts of Sexual Abuse to Children, 2 Journal of Interpersonal Violence 27 (1987); and Quinn, The Credibility of Children's Allegation of Sexual Abuse, 6 Behavioral Sciences & the Law 181 (1988); McCord, Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions; Comment, The Admissibility of "Child Sexual Abuse Accommodation Syndrome" in California Courts, 17 Pacific L.J. 1361 (1986); Note, The Unreliability of Expert Testimony on the Typical Characteristics of Sexual Abuse Victims, 74 Geo.L.J. 429 (1985); Comment, The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases, 34 U.C.L.A.L.Rev. 175 (1986).